**ARTHUR M. DECK & ASSOCIATES and NFM, Inc., Appellants,**

**v.**

**Andre CRISPIN, Sylvia Crispin, Hermena Kelly, Joe Maresh, Anna Maresh, W. James Murdaugh, Jr., Emmy Lou Whitridge, Elizabeth Podoba, Edward Podoba, Christopher Brown, Robert Wilhelmus, John Estill, Miles Glaser, Melanie McKittrick, and Crestwood on the Park Condominium Council, Appellees.**

No. 01–93–01039–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1994.

Rehearing Overruled Dec. 8, 1994.

---

Paul J. Dobrowski, Barrett H. Reasoner, Houston, for appellants.

Russell D. Weaver, Houston, for appellees.

Before MIRABAL, DUGGAN and WILSON, JJ.

## OPINION

MIRABAL, Justice.

Plaintiffs, Arthur M. Deck & Associates and NFM, Inc., appeal the trial court's ruling in this declaratory judgment action. We affirm.

The uncontroverted evidence shows that Crestwood Acres is a Houston subdivision bordered by Memorial Park to the west, Memorial Drive to the north, and Buffalo Bayou to the south. The subdivision was originally platted in 1940 to have 18 one-acre residential lots. Plaintiffs and all defendants except the Crestwood on the Park Condominium Council are Crestwood Acres property owners. Plaintiffs own lots six and seven, which are in the middle of the subdivision and currently stand vacant.

The original 1940 deed restrictions (the 1940 restrictions) for Crestwood Acres limited each residential building site to one single-family residence, and established the minimum square footage of each residence, the set-back line for each site, the facing requirements of each residence, and the lineal front footage of each residence. The 1940 restrictions also provided that all the restrictions and covenants therein would continue for a period of 25 years from January 1, 1940, would be automatically extended for successive periods of 10 years, and could be amended by the owners of a majority of the sites; however, any such amendment would have to be executed and filed within at least one year prior to the expiration of the first 25 years or any 10–year period thereafter.

The 1940 restrictions were replaced by amended restrictions filed on December 30, 1983 (the 1983 amended restrictions). The 1983 amended restrictions provided in pertinent part:

1. All lots in CRESTWOOD ACRES shall be used only for single or multi-family residences, or condominiums, and the usual accessory outbuildings used in connection with such land uses....

. . . .

4. Lots may be subdivided to provide building sites for multi-family residences or for condominiums, without the joinder of the owners of other lots within CRESTWOOD ACRES, so long as the other applicable provisions of these restrictions are complied with....

. . . .

6. All of the restrictions and covenants herein set forth shall become effective on the date one or more copies of this instrument are filed of record in the office of the County Clerk of Harris County, Texas ... and shall be effective until January 1, 1994, and shall automatically be extended thereafter for successive periods of ten (10) years; provided however, that should the owners of a majority of the lots in CRESTWOOD ACRES desire to change, modify or eliminate said restrictions, they may do so by executing and acknowledging an appropriate agreement ... and filing the same for record ... within the one year period prior to January 1, 1994, or within the one year period prior to the expiration of any ten (10) year period thereafter. Provided further, however, that amendments or modifications to permit broader land uses (except strip shopping center, restaurant, service station or retail use) may be effected by the filing of record of an instrument executed by the owners of a majority of the lots (and subdivided portions thereof) in CRESTWOOD ACRES at any time. No future amendment or modification of these restrictions shall have the effect of prohibiting or preventing a use of any lot or portion thereof lawfully commenced in conformity with the valid restrictions in force at the time of commencement of construction of structures intended for such land use.

Sometime after the 1983 amended restrictions were filed, condominiums were constructed on lot nine of Crestwood Acres. Between the years 1983 and 1990, the Morgan Land Company acquired lots one, two,

and three. Two of these lots face Memorial Drive, and it appears the three lots are separated from the rest of Crestwood Acres by a natural ravine. Although still part of Crestwood Acres, lots one, two and three became part of another subdivision, Arlington Court, whose own deed restrictions were filed in December 1990. Lots one, two, and three were replatted into 15 smaller lots. Each lot in Arlington Court is limited to one residence. As of this date, no houses have been constructed on lots one, two, and three, although a large brick wall surrounds the entire subdivision and separates these lots from the rest of Crestwood Acres.

In February 1990, plaintiffs bought lots six and seven. They intended to subdivide the lots and build six houses. They cleared and filled the lots, had the first of the six houses designed, and obtained both the City Planning Commission's approval of the six-house plat and a building permit.

In June 1990, a majority of the Crestwood Acres property owners approved restrictions (the 1990 restrictions) that restricted each lot to one single-family residence. Plaintiffs sued the property owners who approved the 1990 restrictions and obtained a partial summary judgment declaring the 1990 restrictions invalid. Pursuant to a settlement agreement, the defendant property owners filed a release declaring the 1990 restrictions void, affirmed the validity of the 1983 amended restrictions, and promised not to take any action that would change the 1983 amended restrictions prior to January 1, 1993, except as allowed by the 1983 amended restrictions. In return, the plaintiffs promised they would not build any structure on lots six and seven that was not in conformity with the 1983 amended restrictions, waived the attorney's fees awarded to them in the summary judgment action, and abandoned their remaining causes of action.

In 1992, plaintiffs determined that because of the expense and delay caused by the litigation over the 1990 restrictions, it was no longer economically feasible to build only six houses on lots six and seven. They entered into a purchase and sale agreement with a developer who planned to build 18 houses on lots six and seven, in a project called "The Oaks at Crestwood." (The contract between plaintiffs and the developer provides that the sale will not close until this litigation has been resolved.)

In January 1993, a majority of the property owners of Crestwood Acres—all the defendants in this case except the Condominium council—approved and filed "A Declaration of Covenants, Conditions and Amended Restrictions of Crestwood Acres" (the 1993 restrictions). The 1993 restrictions completely supersede and replace the 1983 amended restrictions, acknowledge that lots one, two and three are also subject to the Arlington Court deed restrictions, and further provide in pertinent part:

Section 1.15. "Lot" shall mean and refer to any of the numbered lots shown on the Subdivision Plat.... [T]he term "Lot" or "Lots" shall not mean or refer to Lots 1, 2, or 3 except in Sections 3.1, 3.2 and 3.3. Although no provisions of this Declaration shall apply to or be enforceable against Lots 1, 2, and 3, except for Sections 3.1, 3.2 and 3.3, the Owners of all or any portion of Lots 1, 2, and 3 may enforce the provisions of this declaration as to all other Lots, including, without limitation, the provisions of Section 5.3....

....

Section 3.1. *Single Family Residential Use.* Each Lot is hereby restricted to single-family residential dwellings for single-family residential use only....

Section 3.2. *Type of Dwelling Units* No building shall be erected, altered or placed on any Lot other than detached single-family dwellings and their usual and customary accessory structures; and, no more than one (1) Dwelling Unit is permitted on any Lot.... For the purpose of this Section 3.2 only, as to Lots 1, 2, and 3, the term "Lot" shall mean and refer to each replatted lot as reflected in the map or plat of Arlington Terrace....

Section 3.3. *Height of Dwelling Units and Accessory Buildings* Dwelling Units shall not exceed the lesser of: (a) two (2) stories in height ... or (b) forty (40) feet in height.... Notwithstanding anything in this Section 3.3 to the contrary, Dwelling Units on Lots 1, 2, and 3 may be

constructed up to forty-five (45) feet in height. For purposes of this Section 3.3, the height of a building is measured from the natural ground level at the Front Building Line of the respective lot, except that for Lots 1, 2, and 3 the height of a building shall be measured from the Front Street Line of the respective Lot on which it is located.

Section 3.4. *Subdivision* No lot may be further subdivided in any manner....

. . . .

Section 5.3 *Joinder by the Owner of Lots 1, 2, and 3.* The Owner of Lots 1, 2, and 3 has joined in this Declaration for the limited purpose of imposing the restrictions set forth in Sections 3.1, 3.2, and 3.3 to Lots 1, 2, and 3. Further, notwithstanding any provision to the contrary, no amendment to this Declaration applies to Lots 1, 2, and 3 unless the Owner of Lots 1, 2, and 3, respectively, executes such amendment.

Plaintiffs brought a declaratory judgment action in which they sought to have the 1993 restrictions declared void. They argued the 1993 restrictions are discriminatory because they "benefit certain homeowners in Crestwood at the expense of other lot owners." The case was tried to the bench. The trial court's findings of fact and conclusions of law include the following: the 1993 restrictions are valid and enforceable, and the project proposed for lots six and seven by plaintiffs violates the 1993 restrictions. Plaintiffs assert there was no evidence or insufficient evidence to support these findings, and there was no evidence or insufficient evidence to support the amount of attorney's fees awarded to defendants.

■■■ A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.). In reviewing a legal sufficiency point, this Court will consider only that evidence and reasonable inferences that tend to support the finding, and we disregard all evidence and inferences to the contrary. *Id.* If there is probative evidence, more than a scintilla, in support of the finding, we must overrule

the "no evidence" point of error. *Id.* In reviewing a factual insufficiency point, we consider all the evidence, including sufficient evidence contrary to the trial court's finding, and will set the finding aside only if the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

■■■ Conclusions of law are reviewable when attacked as a matter of law, but not on grounds of sufficiency of the evidence, as if they were findings of fact. *Id.* Although a trial court's conclusions of law may not be challenged for factual insufficiency, the trial court's conclusions drawn from the facts may be reviewed to determine their correctness. *Id.* When specific findings of fact and conclusions of law are filed and a statement of facts is before us, we will sustain the findings if there is sufficient evidence to support them, and we will review the legal conclusions drawn from the facts found to determine their correctness. *Id.*

In points of error one and two, plaintiffs assert the trial court erred in finding the 1993 restrictions are valid and enforceable because the restrictions are discriminatory as a matter of law and there is no evidence, or insufficient evidence, to support the finding. Plaintiffs assert the 1993 restrictions single out lots one, two, and three for special treatment, and are therefore discriminatory on their face. Plaintiffs note that:

(1) Section 1.15 provides that none of the restrictions except sections 3.1, 3.2, and 3.3 are enforceable against lots one, two, and three, but that the owner of lots one, two, and three can enforce the restrictions against all other lots;

(2) Section 5.3 provides the owner of lots one, two, and three joined in the declaration for the sole purpose of imposing the restrictions set forth in sections 3.1, 3.2, and 3.3, but that no other provision in the restrictions applies to lots one, two, and three, and that no amendment to the restrictions shall affect lots one, two, and three unless the owner of those lots executes the amendment; and

(3) Lots one, two, and three are subject to different height restrictions than all other lots.

Plaintiffs also note the owner of lots one, two, and three never signed or executed the 1993 restrictions that afford those lots special treatment.

Plaintiff Deck testified that the 1993 restrictions prevent him from developing lots six and seven. Marvin Katz, a real estate lawyer and the chairman of the Houston Planning and Zoning Commission, testified the 1993 restrictions discriminate because they single out lots one, two, and three for special treatment. A local realtor testified the 1993 restrictions have decreased the value of the lot owned by one of her clients, who had intended to subdivide his lot.

Defendants acknowledge that lots one, two and three are treated differently than the rest of the lots in Crestwood Acres. They argue, however, that the purpose of the restrictions was not to discriminate, but to preserve the integrity and rural atmosphere of the subdivision. They presented evidence that at the time the 1993 restrictions were adopted, lots one, two, and three were subject to Arlington Court's deed restrictions, a brick wall physically separating the lots from the rest of Crestwood Acres had been erected, and an "infrastructure" of utility connections, lights, and streets had been constructed to service the subdivided portions of lots one, two, and three. They note the restrictions plaintiffs term "discriminatory" apply equally to both the defendants and the plaintiffs. They also assert the following provision of paragraph six of the 1983 amended restrictions precluded them from making lots one, two, and three subject to many of the provisions of the 1993 restrictions: "No future amendment or modification of these restrictions shall have the effect of prohibiting or preventing a use of any lot or portion thereof lawfully commenced in conformity with the valid restrictions in force at the time of commencement of construction of structures intended for such land use."

Plaintiffs rely on Zent v. Morrow, 476 S.W.2d 875 (Tex.Civ.App.—Austin 1972, no writ). In Zent, the plaintiffs sought to enjoin the owners of two adjacent lots from con-structing duplexes on their property. Plaintiffs' and defendants' lots were part of a 42–lot subdivision. Id. at 877. Although the subdivision had originally been restricted to one single family residence per lot, a majority of the subdivision homeowners executed a modification to the restrictions permitting the construction of duplexes on the lots owned by the defendants. Id. at 878. The court of appeals, in affirming the judgment permanently enjoining the defendants from building the duplexes, found this instrument was not effective to revoke or amend the original restrictions to permit such action. The court noted that in other jurisdictions, the general rule was that any action taken by property owners to alter, extend, or revoke existing restrictions must apply to all of the properties which are subject to them. Id. The court went on to state:

> A rule that would permit the majority of the lot owners to alter or revoke the restrictions as to a few lots only, and to continue the covenants as to all other property in the section, would invite foreseeable mischiefs not within the original purposes of the subdividers.

Id.

Plaintiffs also rely on several cases from other jurisdictions. In these cases, as in Zent, the courts found that a majority of lot owners could not amend restrictions to release one or a few lots from the restrictions because such amendments did not treat all lot owners equally. See Walton v. Jaskiewicz, 317 Md. 264, 563 A.2d 382 (1989); Ridge Park Home Owners v. Pena, 88 N.M. 563, 544 P.2d 278 (1975); Lakeshore Estates Recreation Area, Inc. v. Turner, 481 S.W.2d 572 (Mo.Ct.App.1972); Riley v. Boyle, 6 Ariz. App. 523, 434 P.2d 525 (1967).

The unique circumstances of this case make it distinguishable from the cases upon which plaintiffs rely. Lots one, two, and three differ significantly from all the other lots in Crestwood Acres. They are a part of another subdivision, Arlington Courts, and are subject to that subdivision's restrictions. They are physically separated from Crestwood Acres by the large brick wall that encompasses Arlington Courts. Although the owner of lots one, two, and three has not

yet built houses on the lots, substantial improvements to the lots have been made. The defendants did not draft the 1993 restrictions with the intention of according special privileges to lots one, two, and three; they believed they had no option other than to exclude these lots from the 1993 restrictions.

■ Because lots one, two, and three are substantially different from the other lots in the subdivision, and because the 1993 restrictions apply uniformly to all the lots in the subdivision that are not exempted under paragraph six of the 1983 restrictions, the evidence supports the trial court's finding that the 1993 restrictions are valid and enforceable. We overrule points of error one and two.

■ In their third point of error, plaintiffs attack the legal and factual sufficiency of the evidence to support the trial court's finding that their proposed project for lots six and seven violates the 1993 restrictions. Neither side sought such a finding in their pleadings, and plaintiffs and defendants all agree the trial court erred in making such a finding. However, because this finding is not in the judgment, and it is not necessary to support the judgment, the trial court's error, if any, is harmless. Accordingly, we overrule point of error three.

In their fourth and fifth points of error, plaintiffs assert the evidence is legally and factually insufficient to support the award of $23,526.25 in attorney's fees.

Although plaintiffs originally brought suit for injunctive relief, breach of the 1990 settlement agreement, breach of contract, and declaratory relief, the parties agreed to go to trial on the single issue of the validity of the 1993 restrictions. The parties also agreed at trial that evidence of attorney's fees would be presented by affidavit. Defendant's attorney submitted his affidavit reflecting that his firm's fee for representing the defendants throughout the entire case was $23,526.25; this amount encompassed: his representation of the defendants at hearings on plaintiffs' application for a temporary injunction and motion for summary judgment and at trial; preparing and filing defendants' answers; responding to plaintiffs' motion for summary judgment; legal research and preparation for court hearings and trial; preparation of exhibits; and meetings and conferences with the defendants and opposing counsel. The plaintiffs' attorney filed an affidavit asserting that no attorney's fees were warranted, and that the amount requested was excessive. Plaintiffs assert the award of attorney's fees should have been limited to the cause of action that was tried to the trial court.

■ In a declaratory judgment action, a trial court may award either side costs and reasonable and necessary attorney's fees as are equitable and just. TEX.CIV.PRAC. & REM. CODE ANN. § 37.009 (Vernon 1986). The award of such attorney's fees is discretionary, and the trial court's award will not be reversed on appeal absent a clear showing of abuse of discretion. *Knighton v. International Business Mach. Corp.*, 856 S.W.2d 206, 210 (Tex.App.—Houston [1st Dist.] 1993, writ denied). The trial court could have concluded that even though other causes of action were alleged, all of the attorneys' fees incurred by defendants were related to the declaratory judgment action in which plaintiffs sought to have the 1993 restrictions declared void. We find no abuse of discretion. Further, the evidence is legally and factually sufficient to support the amount of the attorney's fees awarded. We overrule points of error four and five.

We affirm the judgment.