Bobby J. SORRELL and Shelby
J. Sorrell, Appellants,

v.

Kenneth D. GENGO, Jr., Appellee.

No. 09–00–361 CV.

Court of Appeals of Texas,
Beaumont.

Submitted May 17, 2001.

Decided July 26, 2001.

---

Rodney Price, Vidor, for appellant.

Richard Ellis Turkel, Orange, for appellees.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a judgment rendered by the trial court sitting as factfinder in a non-jury trial. The judgment grants appellee, Kenneth D. Gengo, Jr., a permanent easement across property owned by appellants. The judgment also grants appellants, Bobby J. Sorrell and Shelby J. Sorrell, a drainage easement in order to maintain a drainage pipe located on property owned by appellee. Upon request by appellants, the trial court filed findings of fact and conclusions of law. Appellants complain of the legal and factual insufficiency of various findings of fact by the trial court. The two conclusions of

law, upon which appellants also raise complaints of legal and factual insufficiency, are that (1) appellee is entitled to a permanent ingress-egress easement by implication across appellants' property, and (2) appellee is entitled to a permanent ingress-egress easement by estoppel across appellants' property.

"While findings of fact issued in a bench trial have the same force and dignity as a jury's verdict, the trial judge's findings of fact are not conclusive when there is a complete statement of facts in the record." *Pebble Beach Property Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 287 (Tex.App.—San Antonio 1999, pet. denied). "Conclusions of law are reviewable when attacked as a matter of law, but not on grounds of sufficiency of the evidence, as if they were findings of fact." *City of Beaumont v. Spivey*, 1 S.W.3d 385, 392 (Tex. App.—Beaumont 1999, pet. denied)(quoting *Arthur M. Deck & Assocs. v. Crispin*, 888 S.W.2d 56, 60 (Tex.App.—Houston [1st Dist.] 1994, writ denied)). And although a trial court's conclusions of law may not be challenged for factual insufficiency, the reviewing court may examine said conclusions independently and then examine the legal conclusions drawn from the facts to determine their correctness. *Id.*

The record before us indicates that, at one time, appellee's father, Kenneth Dean Gengo, Sr., purchased the one-acre tract of land subject to the instant litigation. This was in March of 1972. The record reflects that a "lane" for ingress and egress purposes existed prior to the time Gengo, Sr. purchased the one-acre tract, but said "lane" was improved by adding shell so as to create a "driveway" by Gengo, Sr. after he purchased the property in 1972. While there may have been an improved "driveway" in existence at that time, there was no easement because one who owns fee simple title needs no easement across his

own property since fee simple title gives him the right to use all of the property. *Cecola v. Ruley,* 12 S.W.3d 848, 852 (Tex. App.—Texarkana 2000, no pet.); *see also Howell v. Estes,* 71 Tex. 690, 12 S.W. 62 (1888).

Thereafter, Gengo, Sr. sold a portion of the one-acre tract to Sandra Nickens. It is this portion sold to Nickens that becomes the servient tract eventually purchased by appellants. While it appears that Gengo, Sr. had intended to explicitly reserve for himself a 30 foot portion of the property in the deed to Nickens as a driveway for his ingress and egress to other portions of his property, this was not done, and the deed to Nickens is completely silent as to any reservation or easement for Gengo, Sr.'s benefit. The evidence is not in dispute that at the time of the sale of the portion of the one-acre tract to Nickens, the remainder of Gengo, Sr.'s property was "land-locked" without access to the improved "driveway."

■ It appears that the following is very well-settled law:

[W]here the owner of a single area of land conveys away part of it, the circumstances attending the conveyance may themselves, without aid of language in the deed, and indeed sometimes in spite of such language, cause an easement to arise as between the two parcels thus created—not only in favor of the parcel granted ("implied grant") but also in favor of the one remaining in the ownership of the grantor ("implied reservation"). The basis of the doctrine is that the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration. And in the case of an implied reservation it is not necessarily a bar to its creation that the grantor's deed, into

which the law reads it, actually warrants the servient tract thereby conveyed to be free of incumbrance.

*Mitchell v. Castellaw,* 151 Tex. 56, 246 S.W.2d 163, 167 (1952) (and authority cited therein). Therefore, in the instant case, an easement by implied reservation was created by the fact that Gengo, Sr. conveyed a portion of his one-acre tract to Sandra Nickens without an explicit reservation set out in the deed, as well as by the fact that, by including the improved "driveway" as a portion conveyed to Nickens, Gengo, Sr. was effectively cut off from accessing the remainder of his property by any other route. This is also known as an "implied reservation of right of way by necessity over the land conveyed." *Bains v. Parker,* 143 Tex. 57, 182 S.W.2d 397, 399 (1944).

■ The evidence before us is undisputed that the landlocked portion of Gengo, Sr.'s remaining property was eventually conveyed to his son, appellee. It is also undisputed that Sandra Nickens eventually conveyed her entire tract over to appellants. However, at trial, appellee testified that he was in the process of purchasing by contract for deed a separate parcel of land by which he could access his property with his motor vehicles. Appellee further testified that, despite his ability to access his property via this newly purchased separate parcel, without access to the implied easement he would have "considerable difficulty" in getting his van or his attached trailer into his covered carport. However, lack of convenience or ease of access has been held not to give a claimant a way of necessity when the claimant can get to his property by means of his own land. *See Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637, 643 (1958). As was explained by the Court in *Duff:*

It may be true that Matthews and other lot owners, as a matter of convenience,

were not then using the upper road to reach their property and that the upper road had grown up in trees and underbrush and possibly washed out to the extent that it was no longer passable. These facts do not give Matthews a way of necessity across the property he conveyed to Duff by a "straight" general warranty deed. In *Carey v. Rae*, 58 Cal. 159 [1881 WL 1814] (a state following the strict necessity doctrine), it is said: "If the appellant has any right whatever to burden the respondent's land, it originates only in the necessity of the circumstances in which he is placed, and not in grant. Those circumstances show that he has a way, which needs repair, and that until repaired it is impassable. But the impassability of the road gives to a party no right to an easement."

*Id.* at 642–43.

■ Furthermore, even when it is shown that an easement was created at one time by implied reservation by right of necessity, it has been held that such a right is only temporary "which arises from the exigencies of the case and ceases when the necessity terminates." *Bains,* 143 Tex. 57, 182 S.W.2d at 399. Therefore, the doctrine of "strict necessity," which is applicable to the initial *creation* of an easement by implied reservation, *see Mitchell,* 151 Tex. 56, 246 S.W.2d at 168, does not ensure the easement's continued existence when the necessity, which initially led to its creation, ceases. At the time of trial, the burden was on appellee to prove all of the facts necessary to establish the easement. *Bains,* 143 Tex. 57, 182 S.W.2d at 399.

In light of the testimony contained in the record before us, the trial court's holding that appellee is entitled to a permanent easement by implication is incorrect based upon the law contained in the various Tex-

as Supreme Court cases set out above. We now turn to an examination of the trial court's grant of a permanent easement by estoppel to appellee.

Easement by estoppel (sometimes referred to as estoppel in pais) is a legal theory the exact nature and extent of which has not been clearly defined. *Storms v. Tuck,* 579 S.W.2d 447, 451 (Tex. 1979). The Court in *Storms* further elaborated on easement by estoppel thusly:

> As generally stated, the doctrine holds that the owner of land may be estopped to deny the *existence* of an easement by making representations that have been acted upon by a purchaser to his detriment. *Drye v. Eagle Rock Ranch, Inc.* [364 S.W.2d 196, 209 (Tex.1962) ], *supra.* The doctrine generally is resorted to as an exception to the statutes requiring a writing. [law review citation omitted]. Being a creature of equity, it seeks to prevent injustice and to protect innocent parties from fraud.

*Id.* (emphasis in original) (footnote omitted)

In *Vrazel v. Skrabanek,* 725 S.W.2d 709, 711 (Tex.1987), easement by estoppel was legally depicted in the following terms:

> Each case in which estoppel is sought to be applied must rest upon its own facts. *Barfield v. Howard M. Smith Co. of Amarillo,* 426 S.W.2d 834 (Tex.1968). Its purpose is to prevent injustice. *Roberts v. Haltom City,* 543 S.W.2d 75 (Tex. 1976). The general rule is that estoppel in pais may be invoked against a party only when he has failed to do that which he has a duty to do. *Liberty State Bank v. Guardian Savings & Loan Ass'n,* 127 Tex. 311, 94 S.W.2d 133 (1936).

■ As have other courts, we recognize three elements which must be proven in order to create an easement by estoppel, *viz:* "(1) a representation must have

been communicated to the promisee, (2) that it must have been believed, and (3) that there must have been reliance upon such communication." *Exxon Corp. v. Schutzmaier,* 537 S.W.2d 282, 285 (Tex. Civ.App.—Beaumont 1976, no writ). In the instant case, findings of facts "N," "O," and "P" are apparently intended to support the conclusion of law that appellee was entitled to an easement by estoppel.[1] The testimony of Gengo, Sr. contained in the record before us does not support these findings of fact. We set out the brief portions of Gengo, Sr.'s testimony focusing on his discussions with appellants' predecessors in title:

Q.[Counsel for Appellee] Now, this Donna Broussard is the sister of Sandra Nickens—

A.[Gengo, Sr.] Yes.

Q.—who ends up getting a deed?

A. Yes.

Q. And we'll get there. But when you enter into the agreement with Donna Broussard to sell this second tract—

A. Uh-huh.

Q.—do you discuss this same 30 foot that you're going to keep the way you did with the LeBouefs?

A. Absolutely.

Q. And do you make it clear to her that she's not going to be able to buy the entire width—

A. Absolutely.

Q.—because it will landlock you?

A. Absolutely. She very—

Q. Would you have sold it to her if she was going to get the entire thing?

A. I couldn't. I would be blocked—

Q. That would have been a goofy thing to do.

A. I'd be blocked off.

Q. Right. And, so, did you-all have an express agreement that both of you believed to be true that she would buy that but you would continue owning the top 30–foot strip?

A. That's exactly true.

. . . .

Q. Okay. And the deal with Sandra Nickens was going to be a cash deal?

A. Cash deal.

Q. You're not going to finance it?

A. No. She paid cash.

Q. Okay. So—and the deal is you're going to deed to Sandra not only Donna's lot—I'm going to say Lot 2—but also this Lot 3. So, Sandra gets the entire middle section that Bob bought?

A. That's correct. Right. Uh-huh.

Q. And do you discuss with Sandra the fact that you're not going to sell her the whole thing but you're going to keep the 30–foot strip at the top for the roadway?

A. Absolutely. Everybody understood it, everybody except my attorney.

. . . .

Q. Now, as far as going through with the sale to Nickens, was all of that done in reliance on the promise that she was getting only the southern 120 feet?

A. That—that was the way it was supposed to have been.

Cross-examination of Gengo, Sr. appears to get right to the heart of the issue, and brings into focus the lack of any probative value contained in the last question and response set out directly above:

---

1. Said findings are as follows:

    N. A representation was communicated by Nickens to Gengo, sr. (sic), that Gengo, Sr. would be able to continue to cross the mid-dle portion to reach the retained western portion.
    O. The representation was believed by Gengo, Sr.
    P. Gengo, Sr. relied on the representation.

Q.[Counsel for Appellants] Yes, sir. Now, [Counsel for Appellee] asked you a question about relying on a promise. Is this your own promise you're speaking of, a promise that there would be some sort of easement across the top of that property?

A.[Gengo, Sr.] What are you talking about?

Q. Well, [Counsel for Appellee] asked you that question about that you—did you rely on a promise.

A. No, sir. I was relying on [Gengo, Sr.'s attorney] putting that in the deed, and he didn't do it.

Q. Okay, sir.

A. That's what I was relying on.

Q. Okay.

A. And I didn't have any reason to check behind [Gengo, Sr.'s attorney].

Q. Yes, sir. You're not saying Mr. Sorrell made any promises?

A. I don't know of any promises he made. About what?

Q. Well, I'm just asking you, Mr. Gengo.

A. You mean when the property—when the property belonged to me?

Q. Well, in regards to the use of the easement, in regards to anyone using that easement—

A. Sir, I don't know what you're talking about. You're going to have to be more plain.

Q. Well, did—I believe [Counsel for Appellee] asked you a question about relying on a promise. So, I'm just asking you what did you mean by that; and I think you talked about [Gengo, Sr.'s attorney]. So, I'm asking you any other promises that were made by anyone that has affected the use of that easement.

A. My promise to someone?

Q. Your promise, anyone's promise.

A. Sir, I don't know of any—I don't even know what you're talking about. All I know is there was supposed to have been an easement across that property.

Q. Okay.

A. There is supposed to be a 30–foot road across that property. I asked my attorney to do that. I gave him instructions to do that. It laid around on his desk for weeks and weeks and weeks. And when he finally got around—I'd call him and talk—"[Gengo, Sr.'s attorney], you got my deed ready?"

"No, not yet. But I'll have it for you."

And then, finally, he got it ready and I did not go over it with a fine-tooth comb to see and I should have, I guess. I thought—you know, I thought you pay attorneys good money to do good work.

Q. Yes, sir.

A. I didn't know you give them your money, and you get what you get.

It is clear that what appellee is attempting to characterize as a "promise," and some sort of reliance on said "promise," was merely Gengo, Sr.'s attempt to inform his buyer, Ms. Nickens (and her sister, Ms. Broussard), that he intended to deed to her all the land *except* for the 30–foot portion that he would explicitly reserve in the deed for himself so as to be able to access the western portion of his property, the portion that was eventually conveyed to appellee. Unfortunately, as Gengo, Sr. described, there was no reference to the reservation of the 30–foot strip in the deed itself; instead the deed explicitly conveyed the entire tract to Ms. Nickens. It is not entirely clear how Nickens, as purchaser of the servient tract, could have "promised" or "represented" anything to Gengo, Sr., the grantor, that would work to his detriment so as to trigger the easement by estoppel doctrine sought by appellee under the facts of this case.

As we discussed previously, when Gengo, Sr. conveyed the tract to Nickens without an explicit reservation of the 30–foot strip so as to be able to access his property, an implied reservation of right by necessity arose creating an easement over that portion of Nickens' property for ingress and egress purposes. No injustice occurred from the omission of the reservation from the deed. Thereafter, upon appellee's acquiring the "land-locked" property from his father, the implied easement continued so long as the necessity existed. Again, no injustice is presented. The evidence indicates that during the course of the instant litigation appellee acquired another piece of land that now permits him to access his previously "land-locked" property. The implied easement by reservation has ceased to be one of necessity, and therefore appellants may now take full control of their property, including the "30–foot strip," as is permitted by their deed from Ms. Nickens. Such control is to the exclusion of all others. Under the particular facts of this case, appellants' duty was to continue to permit appellee to access his property by the only route available until such time as another route became available to appellee. The evidence indicates such events have taken place. Therefore, appellee has not only failed to prove the basic elements of easement by estoppel, but has also failed to prove, at the time of trial, that appellants "failed to do that which [they] had a duty to do." *Vrazel,* 725 S.W.2d at 711. For the reasons set out above, we sustain appellants' issues complaining of the legal sufficiency of the evidence to sustain the judgment awarding a permanent ingress-egress easement to appellee over appellants' property.

■ With regard to "appellee's issue" complaining of the trial court's grant of a drainage easement to appellants, we agree with appellants that TEX.R.APP. P. 25.1(c) requires *any* party who seeks to alter the trial court's judgment or other appealable order to file a notice of appeal. Furthermore, reviewing courts are forbidden from granting a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause. There has been no showing of just cause by appellee. There was certainly ample evidence regarding the "drainage easement" issue, and appellants' second amended petition explicitly requests injunctive relief from the trial court with regard to appellee's conduct involving "impounding of the natural flow of surface waters or in the permitting of such impounding to continue in a manner that damages the property of Plaintiffs by such impoundment, in violation of Section 11.086, Texas Water Code." Appellee's issue is therefore overruled.

Because the trial court erred in its application of the law of implied reservation of right by necessity to the record evidence, and because there was no evidence to support the trial court's grant of a permanent easement by estoppel to appellee, we reverse that portion of the trial court's judgment granting appellee a permanent ingress-egress easement across the north thirty (30) feet of appellants' property as described in said judgment, and we render judgment that appellants' property as described in the trial court's judgment is no longer encumbered by any easement and may be fully reclaimed by appellants in its entirety to the exclusion of all others. The remaining portion of the trial court's judgment is affirmed.

REVERSED AND RENDERED IN PART; AFFIRMED IN PART.