In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00308-CV

_____

IN THE INTERST OF R.G.S.

On Appeal from the 418th District Court
Montgomery County, Texas
Trial Cause No. 21-10-14495-CV

**MEMORANDUM OPINION**

Jennifer Detillier ("Jennifer") appeals the trial court's order denying her

Petition for Adoption of R.G.S.[1,2] First, Jennifer argues that the trial court erred as

---

[1] To protect the privacy of the child involved in this appeal, we identify the child by her initials and the parties by their first names. *See* Tex. Fam. Code Ann. § 109.002(d).

[2] This case is part of a series of appeals between the same parties that we will address in separate opinions. In cause number 09-22-00384-CV we address the divorce between Jennifer Detillier and Amber Smith. In cause number 09-22-00425-CV we address Jennifer's Petition to Adjudicate Parentage as to R.G.S.

1

a matter of law in failing to waive the requirement that R.G.S.'s managing conservator consent to the adoption, and that R.G.S.'s managing conservator is estopped from denying Jennifer's parentage. Second, Jennifer argues she has standing to bring suit to adopt R.G.S. Third, she argues the res judicata does not bar the adoption despite a previous divorce decree between the parties. Finally, Jennifer argues she was not required to prove Appellee is an unfit parent in order to prevail in her adoption claim. For the reasons below, we affirm.

## Background

Amber Smith ("Amber") and Jennifer married in July 2015. In 2016, Amber and Jennifer signed an agreement with Pacific Reproductive Services pursuant to which Amber underwent a reproductive procedure using a Pacific donor's sperm, and in 2017, Amber gave birth to R.G.S.[3] In October 2020, Amber filed for divorce, identifying R.G.S. as a child born of the marriage.[4] On April 26, 2021, the parties appeared before the trial court to finalize their divorce/SAPCR in accordance with a Mediated Settlement Agreement ("MSA"), one of the terms of which was that

---

[3]Our discussion of the parties' divorce is for providing background information between the parties and this litigation.

[4]The divorce was filed in the 418th District Court in Montgomery County under cause number 20-10-12649 with the style, "In the Matter of the Marriage of Amber [] and Jennifer [] and in the Interest of [R.G.S.]" and will be referred to as "the divorce/SAPCR" (a "SAPCR" is a suit affecting the parent-child relationship).

2

Jennifer was to be adjudicated as a parent of R.G.S. Ten days prior to the hearing, the trial court had asked the attorneys to provide briefing on the issue of whether the court had the ability "to adjudicate a second mom." Prior to the hearing, Jennifer filed a First Amended Original Counterpetition wherein she asked the court to adjudicate parentage based on Texas Family Code section 160.106 and a case from our sister court, *Treto v. Treto*, 622 S.W.3d 397 (Tex. App.—Corpus Christi 2020, no pet.) (construing *Pavan v. Smith,* 582 U.S. 563 (2017) to provide "the ancillary benefits of a same-sex marriage, including the determination of maternity for the non-gestational spouse of a child born to the marriage"); *see also* Tex. Fam. Code Ann. § 160.106.

At the April 26, 2021 hearing, after questioning the attorneys about whether there was legal authority indicating the trial court could adjudicate Jennifer as a parent, the trial court put the case "on hold" and instructed the attorneys to "talk and decide what you are asking me to do today." When the court went back on the record, it noted that it had been presented a proposed Agreed Final Decree of Divorce which had been filed at 10:37 that morning, and which had been signed by both attorneys and both parties. Jennifer and Amber both testified at the hearing. Jennifer provided testimony regarding her actual care, control, and possession of R.G.S. during her

marriage to Amber, and requested that she be named a non-parent conservator if the trial court decided not to adjudicate her as a parent of R.G.S.

At the conclusion of the hearing, the trial court announced its rulings, including, "I do find [Jennifer] to have standing pursuant 102.003, Subsection 9. I am confirming [Amber] as the mother of the child. I am not adjudicating [Jennifer] as a parent of the child." The trial court also announced it was approving the remainder of the parties' agreements pursuant to the MSA and that it was signing the proposed divorce decree that had been filed that morning. Jennifer did not object. Consistent with the trial court's pronouncement, the Agreed Final Decree of Divorce includes the following language which is relevant to the issues in this appeal:

### Child of the Marriage

The Court finds that [Amber] is the parent of the following child:

Name: [R.G.S.]

. . .

The Court finds no other children of the marriage are expected.

### Standing

The Court finds that JENNIFER [] has standing to bring a Suit Affecting the Parent-Child Relationship regarding the child pursuant to Section 102.003(9) of the Texas Family Code.

[. . .]

4

***Relief Not Granted***

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

On the last page of the decree, Jennifer's and Amber's signatures appear under the following language: "APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE." Jennifer did not file a motion for new trial, nor an appeal.

Nearly six months later, in October 2021, Jennifer instituted this action by filing an Original Petition for Adoption of a Child; or in the Alternative, Original Petition to Adjudicate Parentage.[5] The trial court severed the claim for parentage from the action for adoption and signed an order for a child custody evaluation to be conducted in the adoption case.

In September 2023, the trial court held an evidentiary hearing on Jennifer's Petition for Adoption. At the hearing, Jennifer, Amber, and the court appointed child custody evaluator testified. Dr. Kit Harrison testified that he was assigned as the child custody evaluator and was to perform an adoption study. Dr. Harrison testified

---

[5]The petition was filed in the 418th District Court in Montgomery County under cause number 22-12-16328 with the style, "In the Interest of [R.G.S.]" and is referred to as the "claim for parentage."

5

that he interviewed Jennifer, Amber, R.G.S., and Jennifer's and Amber's significant others. He also conducted home studies of both parties, psychological testing and interviewed "collateral sources[,]" such as R.G.S.'s therapist. A copy of his evaluation was admitted into evidence. According to Harrison, Jennifer wants "validation" that she is R.G.S.'s primary parent. Harrison testified that R.G.S. views Jennifer "a primary parent[,]" that they have a "very normal relationship[,]" Jennifer is a very active participant in R.G.S.'s life, and that she is meeting the emotional, social, and physical needs of R.G.S. He noted that he had concerns in his report that Amber may be attempting to minimize or cancel Jennifer's relationship with R.G.S., but that it has not occurred yet. He called both Jennifer and Amber "terrific[,]" and noted that R.G.S. is doing well with both parties. He testified that R.G.S. is very bonded to each caregiver, has no psychological issues, and that R.G.S. views Jennifer as her parent. He testified that making important decisions is difficult for Amber and Jennifer. He believes that Jennifer needs "guaranteed access, possession, and decision-making roles[.]" He noted that this is the current arrangement between the parties, and if the current orders would stay in place, R.G.S.'s needs would be met, and it would be in her best interest. According to Harrison, if Amber attempted to alienate Jennifer from R.G.S. or "cancel" her parenting role, it would be "both physically and emotionally" harmful to R.G.S. Harrison believes it would be in the

6

best interest of R.G.S. for Jennifer to have "[g]uaranteed access, possession and decision making roles[.]" He also agreed that if the current child conservator orders were to remain in place, R.G.S.'s best interest and needs are being taken care of.

Jennifer testified that she and Amber intended both parties to be the child's parent. Jennifer and Amber lived together as a family unit after R.G.S. was born until they separated in 2020. She said before the separation, there was no questions that they were a family and R.G.S. was her child. Jennifer described her background and her concerns if she was not able to adopt R.G.S. She stated that she does not understand why Amber is challenging the adoption, and that she is concerned, if she does not adopt R.G.S. Jennifer discussed her bond and attachment with R.G.S. and that she has no reason why Amber would justify not allowing her to adopt R.G.S. She stated that Amber has told her "I don't respect the fact that she doesn't want me to have that relationship to [R.G.S.] and I don't know what that means." R.G.S. has told her she is not allowed to call her "mom[.]" Jennifer testified there have been times she has involved the police because "[Amber's] not following the divorce decree." According to Jennifer, Amber has not followed the divorce decree by "not letting me talk to [R.G.S.], not letting me attend [R.G.S.'s] activities, things like that, not discussing before making decisions." Jennifer described conflicts between her and Amber about passports, education, and extra curriculars and acknowledged they

7

have difficulty making shared major decisions about R.G.S. She also testified that Amber has "consistently refused to allow her to adopt R.G.S going back to when they were together as a couple. She believes the adoption is in R.G.S.'s best interest.

Amber testified she has not consented to Jennifer adopting R.G.S. and that she does not believe the adoption is in her child's best interest. She denied trying to reduce Jennifer's relationship with R.G.S. She described her relationship with Jennifer as difficult and negative, explaining it is hard to make decisions, and that there "is always drama, [and] back and forth texts." Amber testified that she does not consent to Jennifer adopting R.G.S. and that she does not believe it is in her child's best interest. She testified they struggle to make decisions about education, visitation, and passports. Amber agreed that she signed a gestational agreement in which she agreed that both she and Jennifer would be legal parents to R.G.S. She also agreed for Jennifer to be listed on R.G.S.'s birth certificate and at the time of her birth, she intended for her and Jennifer to be legal parents of R.G.S. She also agreed that she signed the mediated settlement agreement adjudicating Jennifer as a parent to R.G.S. Amber denied ever filing a legal procedure to change Jennifer's rights to R.G.S. At the conclusion of the hearing, the trial court denied Jennifer's petition to adopt R.G.S. Jennifer timely filed this appeal.

## Analysis

*Standard of Review*

We review a trial court's decision to grant or deny an adoption under an abuse of discretion standard. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984). "A trial court abuses its discretion if it acted without reference to any guiding rules or principles; in other words, we ask whether the act was arbitrary or unreasonable." *In the Int. of R.A.*, No. 09-20-00275-CV, 2022 Tex. App. LEXIS 7575, at *13 (Tex. App.—Beaumont Oct. 13, 2022, no pet.) (mem. op.). "[L]egal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court had sufficient evidence to exercise its discretion. 'This standard has been distilled into a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion.'" *In the Int. of E.R.A.*, No. 09-20-00042-CV, 2021 Tex. App. LEXIS 2026, at *11-12 (Tex. App.—Beaumont Mar. 18, 2021, no pet.) (mem. op.) (quoting *In re M.A.M.*, 346 S.W.3d 10, 14 (Tex. App.—Dallas 2011, pet. denied)).

"In a bench trial, the trial court is the sole judge of the weight and credibility of the evidence and of the witnesses' testimony." *In the Int. of M.B.L.*, No. 09-22-00018-CV, 2022 Tex. App. LEXIS 3417, at *20-21 (Tex. App.—Beaumont May 19,

9

2022, pet. denied) (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)). Here, the trial court filed a Findings of Fact and Conclusions of Law. "While findings of fact issued in a bench trial have the same force and dignity as a jury's verdict, the trial judge's findings of fact are not conclusive when there is a complete statement of facts in the record." *Sorrell v. Gengo*, 49 S.W.3d 627, 629 (Tex. App.—Beaumont 2001, no pet.) (internal quotation marks and citation omitted). As a reviewing court, we are not entitled to substitute our judgment for that of the trial court. *In re W.E.R.*, 669 S.W.2d at 716-17.

*Consent, Waiver and Good Cause*

In her first issue, Jennifer argues that the trial court erred as a matter of law when it failed to waive the section 162.010 requirement that the child's managing conservator consent to the adoption. *See* Tex. Fam. Code Ann. § 162.010(a) ("Unless the managing conservator is the petitioner, the written consent of a managing conservator to the adoption must be filed. The court may waive the requirement of consent by the managing conservator if the court finds that the consent is being refused or has been revoked without good cause.").

"[W]hen the petitioner is not the managing conservator and the managing conservator has not consented to the adoption, the trial court may not grant the adoption unless it first finds that the managing conservator's consent was refused or

revoked without good cause." *In the Int. of J.W.*, Nos. 02-23-00047-CV, 02-23-00048-CV, 2024 Tex. App. LEXIS 191, at *13 (Tex. App.—Fort Worth Jan. 11, 2024, no pet. h.) (mem. op.); *see also* Tex. Fam. Code Ann. § 162.010. The party seeking the waiver of consent has the burden of proof to show the managing conservator lacks good cause. *Id*. (citing *In the Int. of M.P.J.*, No. 14-03-00746-CV, 2004 Tex. App. LEXIS 6714, at *12 (Tex. App.—Houston [14th Dist.] July 20, 2004, pet. denied) (mem. op.)). "A managing conservator has good cause to refuse consent when it has a good faith reason to believe the best interest of the child requires that it withhold consent." *In the Int. of M.P.J.*, 2004 Tex. App. LEXIS 6714, at *12; *In the Int. of Child*, 2015 WL 6507843, at *2 (Tex. App.—San Antonio, Oct. 28, 2015, no pet.) (mem. op.). We review a trial court's findings regarding good cause under an abuse-of-discretion standard. *See In the Int. of M.T. & K.T.*, 21 S.W.3d 925, 930 (Tex. App.—Beaumont 2000, no pet.); s*ee also In the Int. of J.W.*, 2024 Tex. App. LEXIS 191, at *23; *In the Int. of B.L.R.*, 592 S.W.3d 453, 466 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (mem. op.); *In the Int. of a Child*, 2015 Tex. App. LEXIS 11026, at *7.

Jennifer argues, "No evidence supported a finding by the trial court to show good cause to withhold consent." We note that Jennifer, as the party seeking a waiver of the required consent, bore the burden to establish lack of good cause. "When a

11

party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). And, as noted above, questions regarding whether the evidence was legally or factually insufficient are merely factors in considering whether the trial court abused its discretion. *In the Int. of E.R.A.*, 2021 Tex. App. LEXIS 2026, at *11-12.

In the Findings of Fact and Conclusions of Law, the trial court found Amber had good cause for refusing to consent to the adoption, and based on our review of the evidence we cannot say the trial court abused its discretion in making this finding. In its Findings of Fact and Conclusions of Law, the trial court also found Jennifer was not genetically related to R.G.S., she agreed to the divorce decree in both form and substance, did not object to the decree nor did she file a direct attack on the judgment, an existing parent child relationship exists between Amber and R.G.S. that has not been terminated, Jennifer is not seeking to terminate Amber and R.G.S.'s relationship, Amber has not consented to the adoption, Amber is a fit parent, and adoption would not be in R.G.S.'s best interest. Amber testified she did not believe Jennifer's adoption of R.G.S. was in her best interest. Dr. Harrison testified, "I don't have any opinions about adoption. I think the best interest of the

12

child is met by continued regular access with all these people." Harrison agreed R.G.S.'s best interests and needs would be met if the court's existing orders remained in place. Based on the record in its entirety, we do not agree that Jennifer conclusively demonstrated as a matter of law that Amber lacked good cause for withholding consent to the adoption. The trial court had sufficient information upon which to exercise its discretion and did not act arbitrarily or unreasonably in making its decision. *In the Int. of E.R.A.*, 2021 Tex. App. LEXIS 2026, at *11-12. Therefore, we conclude the trial court did not abuse its discretion in deciding not to waive the requirement that the managing conservator consent to the adoption. *In the Int. of J.W.*, 2024 Tex. App. LEXIS 191, at * 26; Tex. Fam. Code Ann. § 162.010.

*Estoppel to Refuse Consent*

Jennifer asserts the overwhelming weight of the evidence established Amber's refusal to consent is inconsistent with the parties' prior agreements that Jennifer would be a parent, as evidenced by the reproductive services agreement, R.G.S.'s birth certificate and the MSA in the divorce/SAPCR. According to Jennifer, Amber offered no evidence that the material facts were different at the time of the adoption hearing that would justify Amber's change in position regarding consent. Jennifer argues Amber is estopped because "the defense of quasi-estoppel prevents a party from taking an inconsistent position where the party acquiesced or benefited from

13

the position that is inconsistent from her present position, it would be unconscionable to allow the inconsistent position, and the parties had knowledge of all material facts at the time of the conduct upon which the estoppel is based." We disagree.

The trial court heard evidence that Amber's refusal to consent did not represent a change in position. Jennifer testified at trial that she had asked Amber "a handful of times… go[ing] back to the time whey [they] were together" and that "Amber has *consistently* refused to allow [her] to adopt [R.G.S.]." (emphasis added). Moreover, Jennifer does not direct our attention to any authority indicating a managing conservator may be estopped from resisting an adoption to which the managing conservator previously expressed approval. To the contrary Family Code section 162.011 states, "At any time before an order granting adoption of the child is rendered, a consent required by Section 162.010 may be revoked by filing a signed revocation." Tex. Fam. Code Ann. § 162.011. Read together, sections 162.010 and 162.011 indicate a managing conservator who grants consent may, at any time prior to the adoption order, revoke such consent, provided the revocation does not lack good cause. Section 162.010(a) requires the trial court to hold a hearing to determine whether a managing conservator's withholding or revocation of consent is based on good cause. Tex. Fam. Code Ann. § 162.010(a). The statute says nothing about a

14

managing conservator being estopped from revoking consent by virtue of having previously consented. We decline to insert estoppel as an additional, extra-statutory basis upon which a trial court may waive the requirement that a managing conservator provide written consent. In this case, after holding the statutorily-required hearing, the trial court found Amber had good cause not only for refusing consent, but also for revoking any alleged consent. Based on the record, we conclude the trial court did not abuse its discretion in making these findings.

*Adoption by Estoppel*

Finally, Jennifer argues that under the Texas Estates Code she is entitled to adoption by estoppel because she resided with R.G.S. for the first two years of her life. *See* Tex. Est. Code Ann. § 201.054. But this "[d]octrine of equity is not 'the same as legal adoption' nor does it have the legal consequence of a statutory adoption." *Dampier v. Williams*, 439 S.W.3d 118, 121 (Tex. App.—Houston [1st Dist.] 2016, no pet.). This merely protects the adopted child's inheritance rights. *Id.*

Jennifer also argues that under Family Code section 160.204(a)(5), she is entitled to adoption by estoppel, under the "presumed father" statute, because she resided in the same household with the child for the first two years of her life and represented to other that she was the parent of the child. *See* Tex. Fam. Code Ann. § 160.204(a)(5) ("Under Section 160.204(a), a man is a 'presumed father' if: (5)

15

during the first two years of the child's life, he continuously resided in the household in which the child resided, and he represented to others that the child was his own"). Presumption of paternity is a rebuttable presumption under Texas Law. *See id.* § 160.204(b) ("A presumption of paternity established under this section may be rebutted only by: (1) an adjudication under Subchapter G; or (2) the filing of a valid denial of paternity by a presumed father in conjunction with the filing by another person of a valid acknowledgment of paternity as provided by Section 160.305"). Assuming without deciding that section 160.204(a)(5) establishes Jennifer as a presumed parent, this section does create an adoption of the child, and although it entitles Jennifer to notice of an adoption of the child, notice is not an issue in this case.[6] *See In re D.D.,* 661 S.W.3d 608, 619-620 (Tex. App.—El Paso 2023, no pet.) (explaining an order of termination and adoption of a child was void because the presumed father was not served or provided notice of the proceedings). Family Code section 160.204(a) does not dispense with the requirement of obtaining the managing conservator's written consent under section 162.010(a). Tex. Fam. Code Ann. §§ 160.204(a); 162.020(a).

---

[6]Jennifer did not plead to be adjudicated as R.G.S.'s parent under section 160.204(a)(5) in her Petition for Adoption, but rather asked to establish the parent-child relationship through adoption of R.G.S under section 162.010(a). Therefore, we do not consider this issue on appeal.

*Best Interest of the Child*

Even if Jennifer had met her burden to establish good cause for waiver of Amber's consent, we hold the trial court did not abuse its discretion to find the adoption was not in R.G.S.'s best interest. The trial court's Findings of Fact and Conclusions of Law include, "Adoption of the child by Jennifer would not be in the best interest of the child." Jennifer asserts no evidence supported this finding. We note once again that a trial court's decision to grant or deny an adoption rests on whether adoption is in the best interest of the child, a determination that is within the discretion of the trial court. *In the Int. of W.E.R.*, 669 S.W.2d at 716. We also reiterate that a question regarding whether the evidence was legally insufficient is merely a factor in considering whether the trial court abused its discretion. *In the Int. of E.R.A.*, 2021 Tex. App. LEXIS 2026, at *11-12.

As detailed above the trial court heard Amber testify adoption was not in R.G.S.'s best interest and also heard Dr. Harrison testify he had no opinion about adoption but believed the child's best interest would be met by continued regular access under the court's existing orders. We conclude the trial court had sufficient information upon which to exercise its discretion and did not act arbitrarily or unreasonably in making its decision. *In the Int. of E.R.A.*, 2021 Tex. App. LEXIS 2026, at *11-12. Therefore, based on the record in its entirety, we conclude the trial

court did not abuse its discretion in finding adoption is not in the best interest of the child.

Because the trial court did not abuse its discretion in deciding not to waive Amber's lack of consent, nor in finding that adoption was not in the best interest of the child, we overrule Jennifer's first issue.

## Conclusion

Because we have overruled Jennifer's first issue, we need not address Jennifer's other issues wherein she challenges alternative grounds upon which the trial court may have denied the adoption. *See* Tex. R. App. P. 47.1; Tex. Fam. Code Ann. § 165.010(a). We affirm the trial court's order denying Jennifer's petition for adoption.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on August 14, 2024
Opinion Delivered December 5, 2024

Before Golemon, C.J., Johnson and Chambers, JJ.