FLAGSHIP HOTEL, LTD., Appellant,

v.

The CITY OF GALVESTON, Appellee.

No. 06–03–00016–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 27, 2003.

Decided Oct. 2, 2003.

Rehearing Overruled Oct. 28, 2003.

Jeffrey M. Travis, Travis & Thompson, PC, Dallas, for appellant.

William S. Helfand, Kevin D. Jewell, Magenheim, Bateman & Helfand, PLLC, Houston, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

### OPINION

Opinion by Justice ROSS.

This lawsuit centers around a lease between the City of Galveston and Flagship Hotel, Ltd. The leased premises consist of the Galveston Marine Park and Pier and the Flagship Hotel built on the pier.[1] There are four issues before this Court: (1) the expiration date of the lease; (2) whether the trial court erred in ruling that the provisions of the lease relating to the parties' respective maintenance obligations were unambiguous; (3) whether the trial court erred in sustaining the City's plea to the jurisdiction concerning Flagship's effort to obtain declaratory relief with regard to its alleged water and sewer arrearage; and (4) whether the trial court erred in failing to award attorney's fees to Flagship and whether the trial court erred in awarding attorney's fees to the City.

### Background

On May 20, 1963, the City of Galveston and Nide Corporation entered into a lease agreement under which the City was to construct a hotel on the pier and then lease the hotel and the pier to Nide. By agreement, the lease was to commence January 18, 1966, and run for forty years, until January 18, 2006. After a series of assignments, Flagship Hotel, Ltd. became the lessee. The 1963 lease remains the active lease, but it has been modified by five separate amendments. Three of these amendments purported to extend the time period covered by the lease.

On September 1, 1998, Flagship brought suit against the City. In its petition, Flagship alleged: (1) the City was liable for failure to properly repair and maintain the pier, its surface, drive ramps, curbs, and railings; (2) the City was liable for water payments Flagship had made to the City in excess of an alleged agreement between the parties; (3) the City was liable for ad valorem taxes collected from Flagship in violation of the terms of the lease; and (4) the City was liable for Flagship's reasonable and necessary attorney's fees. The City responded with a general denial of Flagship's claims and asserted various affirmative defenses. The City also filed a counterclaim which requested a declaration that the lease was void.

On December 18, 1998, the City filed a motion for summary judgment, contending the lease was void and unenforceable. The trial court partially granted the motion, finding the fourth amendment to the lease was void and unenforceable. On January 30, 2001, both parties filed countervailing motions for summary judgment. On March 6, 2001, the trial court denied Flagship's motion and partially granted the City's motion on grounds that are not before this Court on appeal.

On March 21, 2001, the City filed a plea to the jurisdiction as to Flagship's request for declaratory judgment regarding the water and sewer billing. On March 22, 2001, Flagship applied for a temporary

---

**1.** On September 30, 2002, the City invited bids to purchase the Flagship Hotel and the pier on which it stands. Landry's Restaurants, Inc. submitted a bid, and the city coun-cil awarded the sale of the hotel and pier to Landry's October 24, 2002. The sale was scheduled to close May 31, 2003.

restraining order and temporary injunction to keep the City from turning off its water supply. The trial court granted the temporary restraining order April 16, 2001, and granted the injunction May 8, 2001. The City then brought an interlocutory appeal from the injunction, contending the trial court lacked jurisdiction over the water bill dispute. On May 11, 2001, the First Court of Appeals held the trial court lacked jurisdiction to issue the injunction. *City of Galveston v. Flagship Hotel, Ltd.*, 73 S.W.3d 422 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

On November 19, 2001, Flagship filed another motion for summary judgment, and on December 11, 2001, the City filed a cross-motion for summary judgment. The trial court denied both these motions January 30, 2002. The parties filed a motion for reconsideration, and on March 27, 2002, the trial court entered a final judgment addressing both motions. Both parties appeal from this judgment, which provides in relevant part as follows:

3. The Fourth Amendment to the Lease Agreement between the Plaintiff and Defendant concerning the Flagship Hotel and Pier, dated May 10, 1988, is void and unenforceable.

■ The Fifth Amendment to the Lease dated August 18, 1993, and as modified is not void. The Fifth Amendment to the Lease does not extend the term of the Lease and cannot relate back to a void lease. The effective date of the original Lease was adjusted in 1966 by agreement between the City and the original Lessee. THE COURT HEREBY ORDERS the Lease between the Flagship and the City expires January 18, 2006.

5. The Court reverses its order, dated March 6, 2001. The City is entitled to summary judgment that the obligations of the City to repair and maintain the pier and premises are limited to repairs beneath the surface of the pier; and the gas line is excluded from the City's repair and maintenance obligations. The original contract is clear that Lessee is responsible for "the making of any and all exterior repairs to the premises". The Second Amendment to the Lease is not clear who is responsible for the exterior repairs above the surface of the deck other than the Hotel structure and its amenities. However, where a contract contains specific terms within a general clause the general portion of the clause should be read in light of the specific terms. The specific items mentioned in the Lease are all structural components of the pier located beneath the surface of the deck. Therefore, the Defendant's obligations are to be interpreted accordingly. In addition, any obligation not modified by the Second Amendment remains as drafted into the original Lease. Therefore, it is HEREBY ORDERED BY THE COURT the responsibility for exterior repairs above the surface of the deck on which the Hotel is located, whether it be lights, pier rails, or guard rails, are the responsibility of the Plaintiff.

. . . .

8. Plaintiff, as lessee of the Flagship Hotel pursuant to the Lease Agreement, as amended, with the City is not liable for City ad valorem taxes on the leasehold and leasehold improvements of the Flagship Pier and Hotel. THIS COURT HEREBY ORDERS the City is liable for Plaintiff's payment of ad valorem

taxes on the leasehold or leasehold improvements in the sum of $47,322.06.

9. THE COURT FURTHER FINDS the First Court of Appeals decision and order dated March 14, 2002 holds this Court does not have jurisdiction to rule on the Flagship's alleged water service arrearage based on the First Court of Appeals statement in its conclusion: "We hold, pursuant to the clear provisions of the relevant sections of the Texas Water Code, the trial court lacked jurisdiction over **this specific dispute regarding Flagship's alleged water service arrearage** and the City's intention to discontinue water service to the hotel." Therefore, the defendant's Plea to Jurisdiction as to Plaintiff's Request for Declaratory Judgment Regarding Water and Sewer Billing is **GRANTED.** It is therefore **ORDERED** that Plaintiff's Request for Declaratory Judgment Regarding Water and Sewer Billing is dismissed for want of subject matter jurisdiction.

### Standard of Review

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Id.* at 548–49. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.* at 549. Questions of law are reviewed de novo and will be upheld if the judgment can be sustained on any legal theory supported by the evidence. *Cook Composites, Inc. v. Westlake Styrene*

*Corp.*, 15 S.W.3d 124, 131 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd).

### Expiration Date of the Lease

As its first point of error, Flagship contends the trial court erred in applying Section 307.023 of the Texas Local Government Code to hold that the term of the lease expires January 18, 2006. This statute allows the governing body of the municipality to enter into any contract in connection with the pier and its facilities on terms it considers to be in the best interest of the municipality. However, such a lease cannot "exceed 40 years from the date of the lease or contract." Tex. Loc. Gov't Code Ann. § 307.023 (Vernon 1999).

In this case, the lease was signed May 20, 1963, but by agreement, the lease was to commence January 18, 1966, and run for forty years, until January 18, 2006. On January 28, 1981, the City and Gulf Resorts, Ltd., the lessee at that time, executed a second amendment to the lease. By this second amendment, Gulf Resorts agreed to spend not less than $700,000.00 for hotel improvements by December 31, 1981. The primary term was still to run until January 18, 2006, but under the second amendment, the lessee had the option to renew the lease for three additional five-year periods. If all renewal options were exercised, the lease would end January 18, 2021 (39 years, 11 months and 20 days from the date of the second amendment). In May 1988, the City and Hospitality Interests, Inc., the lessee at that time, executed a fourth amendment to the lease. Under the fourth amendment, Hospitality Interests agreed to spend not less than $600,000.00 for hotel improvements by July 1, 1988. The primary term of the lease was still to run until January 18, 2006, but under the fourth amendment, the lessee had the option to renew for five

successive five-year terms. If all options were exercised, the lease would run until January 18, 2031 (42 years and 7 months from the date of the fourth amendment). In August 1993, the lease was amended a fifth time. Under the fifth amendment, Evergreen Lodging, Inc., the lessee at that time, agreed to spend $250,000.00 for renovations by December 1992 as a condition precedent to its right to invoke the five five-year renewal options as provided in the fourth amendment. If all options were exercised under the fifth amendment, the lease would expire January 18, 2031 (37 years and 5 months from the date of the fifth amendment).

The interpretation of an unambiguous contract is a question of law, which is reviewed de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999). We also review the trial court's interpretation of applicable statutes de novo. *Tex–Air Helicopters, Inc. v. Galveston County Appraisal Review Bd.*, 76 S.W.3d 575, 581 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). When construing a statute, we look to the Legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain the Legislature's intent from the language it used in the statute and not look to extraneous matters. *Id.*

Flagship contends each amendment to the original lease created a new lease; thus, both the second and the fifth amendments are effective to create new lease agreements with terms extending the leasehold interest until January 18, 2021, or January 18, 2031, respectively, without violating Section 307.023. Flagship agrees that the plain language of the statute prohibits a particular lease from exceeding a term of forty years, but contends nothing in the statute prohibits the City from making successive leases, so long as the term

of any such successive lease does not exceed forty years.

Flagship relies on *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 547–48 (Tex. App.-Houston [1st Dist.] 1994, no writ), to illustrate that, "A modification to a contract creates a new contract that includes the new, modified provisions and the unchanged old provisions." *See also Greenbelt Elec. Coop., Inc. v. Johnson*, 608 S.W.2d 320, 325 (Tex.Civ.App.-Amarillo 1980, no writ). Flagship contends that each time an amendment was executed by the parties, a new lease agreement was formed and the provisions of Section 307.023 must be applied to that new lease agreement independently of the old agreement. The City, on the other hand, contends the date of the lease remains as an unchanged old provision of the original lease, which causes the forty years to still run from that original date, because Section 307.023 states a lease cannot "exceed 40 years from the date of the lease." The City summarizes its position by saying, "In short, the addition of the amendments to the lease does not modify or nullify the commencement date of the original lease. Rather, the amendments are merely an attempt to *add* something to the lease: an extension of the lease term."

The City believes Flagship's method of calculating the lease term, which essentially allows infinite extensions of the lease term, so long as no single one extends beyond forty years, contradicts the wording of Section 307.023, which says a lease cannot "exceed 40 years from the *date of the lease* ...." TEX. LOC. GOV'T CODE ANN. § 307.023 (emphasis added). One of the purposes of Section 307.023 is to prevent the City from entering into an extremely lengthy lease of the pier. The forty-year term limit allows the City the opportunity to re-evaluate what it is doing with the premises at least once every forty years.

Flagship contends the amendments were in compliance with the intent of Section 307.023 because the City was able to reevaluate its use of the pier at the time of the negotiations for each amendment. In fact, the City was able to negotiate improvements to the premises with each new amendment. At the time of the amendments (except for the fourth amendment, which Flagship admits is void), the City was not locked into a newly negotiated term of longer than forty years.

Each party asserts two alternative dates which it contends must be the expiration of the lease. Flagship's first alternative is that the lease runs until January 18, 2031, pursuant to the fifth amendment. Flagship's second alternative is that the lease runs until January 18, 2021, pursuant to the second amendment. The City's first alternative is that the lease runs until May 20, 2003, pursuant to the date of the original lease. The City's second alternative is that the lease runs until January 18, 2006, pursuant to the agreed start date of the lease.

■ We hold that Flagship's first alternative is the correct expiration date of the lease. We agree with the trial court that the fourth amendment to the lease is void as to its term, because it was in excess of forty years from the time of the execution of the fourth amendment. However, portions of the fourth amendment were validly incorporated into the fifth amendment, even though the fourth amendment itself is void. The fifth amendment provides:

> Article III of the Amended Lease is hereby further amended by amending Section 3.05, as set forth in the Fourth Amendment to Lease, as hereinafter set forth:
>
>> Section 3.05 It shall be a condition precedent to the effectiveness of the provisions of Section (3) of the Fourth Amendment to this lease (which Sec-

tion amends Section 4.01 of this Lease) that the Lessee shall promptly commence with the remodeling and redecorating of the Hotel being operated on a portion of the demised premises and that the Lessee shall, without liability to the Lessor, incur expenses of not less than $250,000 by the 31st day of December, 1992, or as soon thereafter as is practicable, . . . .

Although the fourth amendment is void, other provisions were incorporated into the fifth amendment when the City and Flagship negotiated their incorporation. The fifth amendment is within the forty-year statutory limit and is a valid amendment. The term of the lease is based on a forty-year period from the original lease dated January 18, 1966, plus an additional twenty-five years (five five-year options), which causes the lease to expire January 18, 2031. The period from the date of the fifth amendment, August 18, 1993, to January 18, 2031, is thirty-seven years and five months. Because this is less than forty years, Flagship is in compliance with the requirements of Section 307.023.

We believe this approach is in harmony with the intent of the statute to prevent the City from binding itself for longer than forty years at any one time. With the exception of the fourth amendment, the newly negotiated terms did not exceed forty years from the time they were agreed on by the parties. Because each amendment created a new lease for the purpose of Section 307.023, the lease expires January 18, 2031. Flagship's contention the trial court erred in holding the lease expires January 18, 2006, is sustained.

### Maintenance Obligations

Flagship contends the maintenance obligations of the parties were ambiguous because of conflicts within the contract. Flagship also contends the ambiguity was

evidenced by previous actions taken by the City. Despite these contentions, the trial court granted summary judgment in the City's favor with respect to the maintenance obligations of the parties.

 Whether a contract is ambiguous is a question of law. *O'Kehie v. Harris Leasing Co.,* 80 S.W.3d 316, 318 (Tex.App.-Texarkana 2002, no pet.). There are two steps to an ambiguity analysis. *Cook Composites, Inc.,* 15 S.W.3d at 131. First, we apply the applicable rules of construction and decide if the contract is ambiguous. *Id.* The second step is reached only if we find the contract is ambiguous. *Id.* If we find a contract ambiguous, then a trier of fact may consider the parties' interpretation and other extraneous evidence. *Id.* Because an ambiguous contract raises a question of fact, it cannot be disposed of on summary judgment. *Id.*

 The primary concern in the first step of the ambiguity analysis is to determine and give effect to the intentions of the parties as expressed in the instrument. *Id.* We look only within the four corners of the agreement to see what is actually stated, not at what was allegedly meant. *Id.* No single provision of the contract is to be controlling, as we must consider all of the provisions with reference to the entire contract. *Id.* at 132.

The maintenance provisions of this lease are found in article VI of the original lease, as amended by provisions contained in the second amendment. Under sections 6.01 and 6.02 of the original lease, the lessee was assigned all duties with regard to paying for expenses relating to the maintenance of the "demised premises," which were defined as the pier and any improvements to the pier. The second amendment to the lease added sections 6.07 and 6.08 to the maintenance provisions of the lease. Flagship contends that, when sections 6.07 and 6.08 of the lease are read together, it

becomes ambiguous as to the maintenance for which the City is responsible with respect to the pier.

Section 6.07 reads:

The Lessee further agrees to maintain the Hotel in a first class condition, both as to structure and amenities. . . .

Section 6.08 reads:

Notwithstanding the provisions of Section 6.01 hereof, during the term of this lease, the Lessor shall, at its expense, pay all maintenance and operation expenses of that portion of the demised premises commencing with the surface of the deck on which the Hotel is located and proceeding downward. Such responsibility shall include, without limitation, the keeping and maintaining in good repair of the columns, beams, supporting members and other structural portions of the demised premises from the surface of the deck upon which the Hotel is located and proceeding downward, and the making of any and all repairs thereto.

Section 6.01, which was a part of the original lease, reads, in part:

Lessee shall, at its expense, pay all maintenance and operation expenses of the demised premises . . . including . . . the making of any and all exterior repairs to the premises.

Flagship asserts:

When the provisions of section 6.07 are read in conjunction with the provisions of section 6.08, it is unclear which party had the obligations to maintain things attached to the leasehold property. The term "surface of the deck" is ambiguous in that it is unclear whether the "surface of the deck" is intended to mean things attached to the Pier (such as light poles and railings) or whether the "surface of the deck" is the pave-

ment of the deck only, or if it even includes the pavement on the deck.

The City contends that there is no conflict between the two sections and maintains that, while section 6.07 obligates Flagship to maintain the hotel in a first-class condition as to its structure and amenities, it does not absolutely limit Flagship's obligations or negate responsibility on the part of Flagship in maintaining other portions of the premises.

■ When a contract contains specific terms within a general clause, the general clause should be read in light of the specific terms. *See Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.1987). All of the lease's specific terms requiring repairs to be made by the City refer to structural components of the pier located beneath the surface of the deck. Again, section 6.08 reads:

> Notwithstanding the provisions of Section 6.01 hereof, during the term of this lease, the Lessor shall, at its expense, pay all maintenance and operation expenses of that portion of the demised premises commencing with the surface of the deck on which the Hotel is located and proceeding downward. Such responsibility shall include, without limitation, the keeping and maintaining in good repair of the columns, beams, supporting members and other structural portions of the demised premises from the surface of the deck upon which the Hotel is located and proceeding downward, and the making of any and all repairs thereto.

Considering only the language within the four corners of the contract, we perceive no ambiguity in the maintenance obligations of each party, especially in light of the specific terms listed after the general term "surface of the deck." The City's maintenance obligations start with the surface of the deck, including the pavement,

and proceed downward, just as the plain language of section 6.08 states. We do not find "surface of the deck" to be an ambiguous phrase. Neither do we find that "surface of the deck" would include things attached to it, especially when the obligation is described as surface of the deck and proceeding downward. The things attached to the deck, such as light poles and railing, would be described as proceeding upward from the surface of the deck. We therefore agree with the trial court that the contract is not ambiguous. Flagship's contention to the contrary is overruled.

### Plea to the Jurisdiction

In the underlying lawsuit, Flagship asked for a declaratory judgment that its alleged water and sewer arrearage was barred both by the statute of limitations and by agreements between the Galveston City Manager and Flagship. Flagship also sought an injunction preventing the City from cutting off water service to the hotel. The trial court granted the injunction, and the City brought an interlocutory appeal.

The First Court of Appeals held the trial court lacked jurisdiction over the specific dispute regarding Flagship's alleged water service arrearage and the City's intention to discontinue water service to the hotel. *Flagship Hotel, Ltd.*, 73 S.W.3d at 427–28. After considering the First Court of Appeals' opinion, the trial court granted the City's plea to the jurisdiction. The trial court held it did not have jurisdiction to rule on Flagship's alleged water service arrearage "based on the First Court of Appeals statement in its conclusion: 'We hold, pursuant to the clear provisions of the relevant sections of the Texas Water Code, the trial court lacked jurisdiction over **this specific dispute regarding Flagship's alleged water service arrear-**

**age** and the City's intention to discontinue water service to the hotel'."

As part of this appeal, Flagship contends the trial court erred in granting the City's plea and in dismissing its declaratory judgment claims relating to the water issues. Flagship argues that the First Court of Appeals' opinion addresses only claims for injunctive relief. Flagship contends the trial court has jurisdiction over the declaratory judgment claims relating to the water issues and only lacks jurisdiction with respect to its request for injunctive relief.

The City contends the prior decision of the First Court of Appeals is the law of this case and controls the jurisdictional question surrounding the water dispute; the City alleges Flagship's interpretation of the opinion is much too restrictive. The City points out the purpose of a temporary injunction is "to preserve the status quo, or the 'last, actual, peaceable, noncontested status which preceded the pending controversy.'" *Crestview, Ltd. v. Foremost Ins. Co.,* 621 S.W.2d 816, 827 (Tex.Civ.App.-Austin 1981, writ ref'd n.r.e.). A temporary injunction is issued only on a showing of a probable injury and a probable right to recover after a final hearing. *Id.* at 828.

■ Although the First Court of Appeals' decision only addressed whether the trial court could issue a temporary injunction, it held that the Texas Water Code granted the City exclusive original jurisdiction over such disputes and the Texas Natural Resource Conservation Commission (TNRCC) appellate jurisdiction. *See*

*Flagship Hotel, Ltd.,* 73 S.W.3d at 427. We find the First Court of Appeals' reasoning persuasive, and Flagship must exhaust its administrative remedies through the Texas Commission on Environmental Quality, formerly the TNRCC.

The trial court properly sustained the City's plea to the jurisdiction.

### Attorney's Fees

■ Flagship contends the trial court abused its discretion by failing to award attorney's fees under Section 38.001. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997). The City contends Flagship was not entitled to attorney's fees because it was not a prevailing party on its breach of contract claim.[2]

■ A trial court's award of attorney's fees is reviewed for an abuse of discretion. *AU Pharm., Inc. v. Boston,* 986 S.W.2d 331, 337 (Tex.App.-Texarkana 1999, no pet.); *Knighton v. Int'l Bus. Machs. Corp.,* 856 S.W.2d 206, 210 (Tex. App.-Houston [1st Dist.] 1993, writ denied). Attorney's fees are awarded under Section 38.001 for a breach of contract claim. "When a prevailing party in a breach of contract suit seeks attorney's fees under Section 38.001, makes its proof, and meets the requirements of the section, an award of attorney's fees is mandatory." *Atl. Richfield Co. v. Long Trusts,* 860 S.W.2d 439, 449 (Tex.App.-Texarkana 1993, writ denied); *see Bocquet v. Herring,* 972 S.W.2d 19, 20–21 (Tex.1998).

---

**2.** The City contended at oral argument Flagship had not presented the claim as required under Section 38.002. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.002 (Vernon 1997). This error had not been alleged in the City's briefs. Arguments and claims of error not raised in the party's brief are considered waived. *See Vawter v. Garvey,* 786 S.W.2d 263 (Tex.1990); *In re R.L.H.,* 771 S.W.2d 697 (Tex.App.-Austin

1989, writ denied). By failing to present a point or argument, a party waives the right to complain of the error. The court of appeals will err if it reverses on that ground in the absence of properly assigned error *Pat Baker Co. v. Wilson,* 971 S.W.2d 447, 450 (Tex. 1998); *Vawter,* 786 S.W.2d 263; *Allright, Inc. v. Pearson,* 735 S.W.2d 240 (Tex.1987).

To recover under Section 38.001, a party must be a prevailing party and be awarded damages. *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex.1997); *Howard v. City of Kerrville,* 75 S.W.3d 112, 119 (Tex.App.-San Antonio 2002, pet. denied). Several courts of appeals have defined a prevailing party as the party to the suit "who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of its original contention." [3] This definition originated from the definition in Black's Law Dictionary.[4] The City argues Flagship is not a prevailing party because it did not recover on the main issue. Flagship only recovered for one of the three allegations of breach of contract. The City argues that, since it successfully defended on the main issue of repairs and maintenance, Flagship did not prevail on the main issue.

Black's Law Dictionary now defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded." BLACK'S LAW DICTIONARY 1145 (7th ed.1999). Our research indicates courts have only considered whether a party prevailed on the main issue where both parties received judgment under the cause of action, i.e., where both parties breached the contract. *Fed. Deposit Ins. Corp. v. Graham,* 882 S.W.2d 890, 900–01 (Tex.App.-Houston [14th Dist.] 1994, no writ); *Criton Corp. v. Highlands Ins. Co.,* 809 S.W.2d 355, 357–58 (Tex.App.-Houston [14th Dist.] 1991, writ denied); *Hoffman v. Deck Masters, Inc.,* 662 S.W.2d 438, 441 (Tex.App.-Corpus Christi 1983, no writ). If only one party prevailed, courts have concluded that party prevailed on the main issue. *See Norrell v. Aransas County Navigation Dist. # 1,* 1 S.W.3d 296, 303 (Tex.App.-Corpus Christi 1999, no pet.); *Emery Air Freight Corp. v. Gen. Transp. Sys., Inc.,* 933 S.W.2d 312, 316 (Tex.App.-Houston [14th Dist.] 1996, no writ); *Weng Enters., Inc. v. Embassy World Travel, Inc.,* 837 S.W.2d 217, 222–23 (Tex.App.-Houston [1st Dist.] 1992, no writ).

We believe the main focus of our inquiry should be whether the agreement was breached, not the extent of the breach. Flagship prevailed on the breach of contract cause of action, although the extent of the breach was not as substantial as first alleged. The definitions adopted by other courts do not require the party to receive a judgment "to the extent of its original contention."[5] Further, while only

---

**3.** *Fed. Deposit Ins. Corp. v. Graham,* 882 S.W.2d 890, 900 (Tex.App.-Houston [14th Dist.] 1994, no writ) (quoting *Criton Corp. v. Highlands Ins. Co.,* 809 S.W.2d 355, 357 (Tex.App.-Houston [14th Dist.] 1991, writ denied)); *see City of Amarillo v. Glick,* 991 S.W.2d 14, 17 (Tex.App.-Amarillo 1997, no pet.); *G. Richard Goins Constr. Co. v. S.B. McLaughlin Assocs.,* 930 S.W.2d 124, 130 (Tex.App.-Tyler 1996, writ denied); *Weng Enters., Inc. v. Embassy World Travel, Inc.,* 837 S.W.2d 217, 222–23 (Tex.App.-Houston [1st Dist.] 1992, no writ); *Hoffman v. Deck Masters, Inc.,* 662 S.W.2d 438, 441 (Tex.App.-Corpus Christi 1983, no writ).

**4.** The Court of Appeals at Corpus Christi adopted the definition from the fifth edition of Black's Law Dictionary published in 1979.

*See Hoffman,* 662 S.W.2d at 441. The First Court of Appeals at Houston adopted the definition from *Hoffman. See Weng Enters., Inc.,* 837 S.W.2d at 222–23. The Court of Appeals at Tyler adopted the definition from *Weng. See G. Richard Goins Constr. Co.,* 930 S.W.2d at 130. The Fourteenth Court of Appeals at Houston adopted the definition from the fourth edition of Black's Law Dictionary. *See Criton,* 809 S.W.2d at 357. The Court of Appeals at Amarillo adopted the definition from both of the Courts of Appeals at Houston. *See Glick,* 991 S.W.2d at 17.

**5.** *See Glick,* 991 S.W.2d at 17; *G. Richard Goins Constr. Co.,* 930 S.W.2d at 130; *Graham,* 882 S.W.2d at 900; *Weng Enters., Inc.,* 837 S.W.2d at 222–23; *Hoffman,* 662 S.W.2d at 441.

a prevailing party may recover under Section 38.001, net recovery in the overall suit is not required. *Atl. Richfield Co.,* 860 S.W.2d at 449. Determination of the prevailing party focus should be based on the success on the merits, i.e., the party who is vindicated by the trial court's judgment. *City of Amarillo v. Glick,* 991 S.W.2d 14, 17 (Tex.App.-Amarillo 1997, no pet.).

■ Accordingly, we hold that "prevailing party" means the "party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *See* BLACK'S LAW DICTIONARY 1145. If multiple parties receive judgment under the cause of action, the party which received judgment on the "main issue" is the prevailing party. Since Flagship is the only party that received a judgment under breach of contract (for recovery of sums paid by Flagship to the City for ad valorem taxes), Flagship is the prevailing party. Because Flagship also received damages ($47,-322.06), it was entitled to its attorney's fees.

■ The City also argues Flagship was not entitled to its attorney's fees because it failed to segregate the fees attributable to the contract cause of action from its other causes of action. A party seeking to recover attorney's fees carries the burden of proof to establish the amount which is reasonable and necessary. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991) (DTPA); *Aetna Cas. & Sur. v. Wild,* 944 S.W.2d 37, 40 (Tex.App.-Amarillo 1997, writ denied) (adopting

*Stewart* in context of Section 38.001). The general rule is that attorney's fees attributable to other defendants and other causes of action must be segregated. *See Stewart Title Guar. Co.,* 822 S.W.2d at 10–11; *Aetna Cas. & Sur.,* 944 S.W.2d at 40. An exception to the general rule is when the claims are inseparably intertwined. *Stewart Title Guar. Co.,* 822 S.W.2d at 11; *Aetna Cas. & Sur.,* 944 S.W.2d at 40. The determination of whether attorney's fees can be segregated is a question for the court. *Aetna Cas. & Sur.,* 944 S.W.2d at 41. This determination requires a consideration of the substantive law necessary to establish facts to support a recovery of the multiple claims. *Id.*

■ We hold that, in the instant case, the declaratory judgment actions were not inseparable from the breach of contract claims. Validity of the modifications of the lease, construction of the provisions relating to the parties' respective maintenance obligations, and liability for water payments, are all claims that are not inseparably intertwined with the breach of contract claims. Flagship correctly points out it did segregate the breach of contract claims from the other causes of action. The City argues Flagship should further segregate fees based on the different theories of breach of contract. However, segregation based on separate theories of the same cause of action is not necessary.[6]

■ The breach of contract claims are not inseparable from the other claims.[7]

6. Courts examine segregation based on whether different causes of action have similar elements and arise out of the same set of circumstances. They do not examine whether the different theories of the same cause of action need to be segregated. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex.1991); *Aetna Cas. & Sur. v. Wild,* 944 S.W.2d 37, 41 (Tex.App.-Amarillo 1997, writ denied); *Panizo v. Young Men's Christian Ass'n,* 938 S.W.2d 163, 169–70 (Tex.App.-

Houston [1st Dist.] 1996, no writ); *Kenneth H. Hughes Interests, Inc. v. Westrup,* 879 S.W.2d 229, 236–37 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *see also AU Pharm., Inc. v. Boston,* 986 S.W.2d 331, 338 (Tex. App.-Texarkana 1999, no pet.).

7. Flagship argues that the segregation standard is difficult to meet. We disagree and note that segregated attorney's fees can be established with evidence of unsegregated at-

Because Flagship did segregate its attorney's fees in its counsel's affidavit, and because the City only contests this segregation on the basis of the different theories of breach of contract, Flagship's affidavit is uncontroverted. Uncontroverted testimony by an interested witness concerning attorney's fees may establish a fact as a matter of law. *Cale's Clean Scene Carwash, Inc. v. Hubbard,* 76 S.W.3d 784, 787 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The uncontroverted affidavit establishes the reasonable and necessary attorney's fees for the breach of contract claim as $48,862.00. The trial court abused its discretion in failing to award Flagship its attorney's fees in this amount.

Flagship contends the trial court erred in awarding attorney's fees to the City. The City contends it was entitled to attorney's fees under both Sections 38.001 (breach of contract) and 37.009 (declaratory judgment) of the Texas Civil Practice and Remedies Code. Flagship contends the City was not entitled to attorney's fees because attorney's fees were awarded under Section 38.001 and, because the City breached the contract, it was not a "prevailing party."

 The order granting attorney's fees does not state a basis for the award, and the City alleged it was entitled to attorney's fees under both Sections 38.001 and 37.009. Section 37.009 authorizes the trial court to award costs and "reasonable and necessary" attorney's fees that are "equitable and just." TEX. CIV. PRAC. & REM.

CODE ANN. § 37.009 (Vernon 1997). A party is not required to substantially prevail in order to be awarded attorney's fees under Section 37.009. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 637 (Tex.1996). Thus, it is not an abuse of discretion to award attorney's fees to a nonprevailing party if that is equitable and just under the circumstances.

 Flagship further contends the City cannot be awarded attorney's fees under Section 37.009 because the declaratory judgment did not give rise to any new issues. When a party brings a declaratory judgment action by way of a counterclaim, and that counterclaim involves only issues already raised by the original claim, the party is not entitled to an award of attorney's fees.[8] However, validity of the contract modifications and liability as to water payments were issues not raised in the breach of contract claim. The declaratory judgment action therefore raised new issues.

 The trial court's discretion in awarding attorney's fees under Section 37.009 is limited by whether the attorney's fees were "reasonable and necessary" as well as whether they were "equitable and just." *See Arthur M. Deck & Assocs. v. Crispin,* 888 S.W.2d 56, 62 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *see also Bocquet,* 972 S.W.2d at 20. Further, a party is entitled only to the attorney's fees attributable to the declaratory judg-

---

torney's fees and a rough percent of the amount attributable to the breach of contract claim. *Schenck v. Ebby Halliday Real Estate, Inc.,* 803 S.W.2d 361, 369 (Tex.App.-Fort Worth 1990, no writ); *accord Bradbury v. Scott,* 788 S.W.2d 31, 40 (Tex.App.-Houston [1st Dist.] 1989, writ denied).

**8.** *See Brush v. Reata Oil & Gas Corp.,* 984 S.W.2d 720, 730 (Tex.App.-Waco 1998, pet. denied); *see also John Chezik Buick Co. v.*

*Friendly Chevrolet Co.,* 749 S.W.2d 591, 594–95 (Tex.App.-Dallas 1988, writ denied); *Narisi v. Legend Diversified Invs.,* 715 S.W.2d 49, 51–52 (Tex.App.-Dallas 1986, writ ref'd n.r.e.); *Johnson v. Hewitt,* 539 S.W.2d 239, 240–41 (Tex.Civ.App.-Houston [1st Dist.] 1976, no writ); *Joseph v. City of Ranger,* 188 S.W.2d 1013, 1014–15 (Tex.Civ.App.-Eastland 1945, writ ref'd w.o.m.).

ment action and must segregate such fees from the other causes of action. *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 143 (Tex.App.-El Paso 1997, pet. denied).

 Here, the City failed to segregate fees attributable to the breach of contract cause of action from the cause of action seeking declaratory judgment. As discussed above, these causes are not inseparable. Therefore, we hold the trial court abused its discretion by awarding fees based on unsegregated attorney's fees. Unsegregated attorney's fees however, is some evidence of segregated attorney's fees. *See Stewart Title Guar. Co.*, 822 S.W.2d at 12. We therefore reverse the trial court's award and remand this issue to the trial court for determination, pursuant to Section 37.009, of the properly segregated fees, and for determination of whether an award of such fees is "equitable and just" in light of our opinion, and if so, what amount is "reasonable and necessary."

### Summary and Conclusion

In summary, we reverse the trial court's judgment that the term of the lease expires January 18, 2006, and render judgment that such term expires January 18, 2031. We affirm the trial court's judgment that the provisions of the lease relating to the parties' respective maintenance obligations are unambiguous. We affirm the trial court's determination that it lacked jurisdiction over the water service arrearage. We reverse the judgment denying attorney's fees to Flagship and render judgment that Flagship recover its attorney's fees from the City in the amount of $48,862.00. We reverse the judgment granting the City its attorney's fees and remand this issue for determination (under Section 37.009 of the Texas Civil Practice and Remedies Code), of the properly segregated fees, and for determi-

nation of whether an award of such fees to the City is "equitable and just" in light of our opinion, and if so, what amount is "reasonable and necessary."

Accordingly, the trial court's judgment is reversed in part, rendered in part, and remanded in part for further proceedings consistent with this opinion.