# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 19, 2023

Lyle W. Cayce
Clerk

––––––––––––––

No. 21-40629

––––––––––––––

D2 Excavating, Incorporated,

*Plaintiff—Appellee*,

*versus*

Thompson Thrift Construction, Incorporated; Fidelity
& Deposit Company of Maryland,

*Defendants—Appellants*.

––––––––––––––––––––––––––––––––––––––

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:16-CV-538

––––––––––––––––––––––––––––––––––––––

Before King, Stewart, and Haynes, *Circuit Judges*.

Per Curiam:[*]

This is the second appeal in this contract dispute between D2 Excavating Company ("D2") and Thompson Thrift Construction ("Thompson"). D2 sued Thompson for breach of contract after Thompson refused to pay D2 for removing dirt from a construction worksite in excess of the amount Thompson represented was at the site. A prior panel of this court

––––––––––––––––––––––––––––––

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

affirmed in part and reversed in part the district court's judgment for D2 and remanded the case for modification of the judgment consistent with its opinion. *D2 Excavating, Inc. v. Thompson Thrift Constr., Inc.*, 973 F.3d 430, 438 (5th Cir. 2020). Thompson now appeals the district court's modified judgment, arguing that the prior panel's decision was clearly erroneous because it relied on a breach-of-contract claim that was never pleaded or proven. Thompson thus contends that the district court erred in implementing the prior panel's mandate. Thompson also argues that the district court erred in awarding trial and appellate attorney's fees to D2 by failing to apply the "main issue" test that Texas law requires.

Finding no error in the district court's adherence to the prior panel's mandate and no error in its award of attorney's fees, we AFFIRM.

## I. Facts & Procedural History[1]

Thompson subcontracted with D2 to provide excavation services on its worksite. The site was understood by both parties to be "balanced," meaning no dirt had to be added or removed from the site, and D2 would only need to shift existing dirt around to meet the site plan's specifications. This turned out to be untrue, and D2 encountered dirt far in excess of what the specifications called for. Because of this, D2's expenses increased significantly and it began requesting additional payment from Thompson. Thompson assured D2 that it would be compensated for the extra work and stated that it would issue a written change order once the work was finished and the entire cost was determined. As D2 continued to work, Thompson repeatedly requested that D2 regrade areas that other subcontractors

---

[1] The pertinent facts underlying this dispute are described in our previous opinion and also briefly summarized here for purposes of clarity. *See D2 Excavating, Inc.*, 973 F.3d at 432–33.

disturbed by leaving debris—work that was outside the scope of the Subcontract. This interfered with D2's ability to access certain areas to complete performance of the Subcontract requirements. Thereafter, D2 again requested compensation for handling excess dirt and for all completed labor and materials under the Subcontract, minus the payment for the work that could not be accomplished due to the debris. Thompson refused to pay. As a result, D2 ceased performing work.

D2 filed suit against Thompson and pursued multiple breach-of-contract claims including (1) unpaid materials and labor and (2) costs generated by the removal of excess dirt. D2 also sued for quantum meruit, violations of the Texas prompt pay statute, and to foreclose on a statutory and constitutional lien. Thompson counterclaimed, alleging that D2 breached the contract when it ceased performance prior to completion. Its countersuit also included claims for breach of warranty, indemnification, and a declaration that D2's lien was unenforceable. The district court held a bench trial and later issued a memorandum of findings of fact and conclusions of law which rejected all of Thompson's counterclaims. It also ruled in favor of D2 on both breach-of-contract claims and the quantum meruit claim. It thus awarded damages in the amounts of $81,068.00 for the unpaid materials and labor and $257,588.53 for the costs generated by the excess dirt. Also included in the judgment was an award of attorney's fees in favor of D2 for $356,080.91.

Thompson timely appealed and a previous panel of this court affirmed in part and reversed in part. *D2 Excavating, Inc.*, 973 F.3d at 438. The prior panel determined that, because of the interference of the debris on the construction site, D2 was entitled to cease performing before it completed the work and was fairly owed the $81,068.00 outstanding balance on the contract. *Id.* at 437. In doing so, it also affirmed the denial of Thompson's counterclaims. *Id.* It, however, reversed the portion of the district court's

judgment concerning the excess dirt, holding that "[n]either breach of contract nor quantum meruit allow[ed] D2 to recover for 'excavation of unanticipated excess soil.'" *Id.* As a result, it remanded the case with instructions to modify the judgment consistent with its opinion. *Id.* at 438.

Thompson sought relief from the judgment through a Rule 60(b) motion. Specifically, Thompson argued that, because the previous panel reversed the "only breach-of-contract finding," the district court should revisit the attorney's fee award anew and hold that Thompson was the prevailing party. D2 then moved for an amended final judgment. The district court granted D2's motion in part and denied Thompson's. In granting D2's motion, the court removed the damages award for the excess dirt and left intact the portion affirmed by the prior panel. It also awarded D2 statutory interest, costs, and post-judgment interest. As for attorney's fees, the district court did not reduce the $356,080.91 in trial attorney's fees that was awarded to D2 before the appeal. It also added $111,159.25 in appellate attorney's fees to D2. Thompson appealed.

Thompson now seeks reversal of the district court's post-remand judgment for two reasons. First, Thompson argues that the district court erred in implementing the prior panel's mandate which, according to Thompson, resulted in a manifest injustice. Second, Thompson argues that the district court applied the wrong legal standard when it awarded attorney's fees to D2.

## II. Standard of Review

"We review de novo a district court's interpretation of our remand order, including whether the law-of-the-case doctrine or mandate rule forecloses any of the district court's actions on remand." *Deutsche Bank Nat'l Tr. Co. v. Burke*, 902 F.3d 548, 551 (5th Cir. 2018) (quotation omitted). "The mandate rule requires a district court on remand to effect

our mandate and to do nothing else." *Id.* (quotation omitted). We have, however, provided that the mandate rule can be overcome in three instances: "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision on the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." *Hopwood v. Tex.*, 236 F.3d 256, 272 (5th Cir. 2000).

An award of attorney's fees by the district court is generally reviewed for abuse of discretion, "bearing in mind that court's superior understanding of the litigation and of the costs and fees reasonably incurred in that litigation." *Abner v. Kan. City S. Ry. Co.*, 541 F.3d 372, 378–79 (5th Cir. 2008) (internal quotation marks and citation omitted). We review the legal conclusions supporting a fee award de novo. *Volk v. Gonzalez*, 262 F.3d 528, 534 (5th Cir. 2001).

## III. Discussion

### A. *The Mandate Rule*

Thompson argues that the district court should have disregarded the prior panel's mandate because its decision was clearly erroneous and amounted to a manifest injustice. We disagree.

We have said that the manifest injustice exception is to be applied narrowly, and that "mere doubts or disagreement about the wisdom of a prior decision of this or a lower court will not suffice." *Hopwood*, 236 F.3d at 272. "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must be dead wrong." *Id.* at 272–73. Thompson claims this narrow exception applies here because D2 never pleaded nor prosecuted the breach-of-contract claim affirmed by the prior panel. Rather, the only claim D2 made, according to Thompson, is the excess-

dirt claim that the panel reversed. Thus, Thompson argues that the $81,068.00 damages award for unpaid labor and materials was improper because Texas law does not allow for a "freestanding contractual damages award."

Thompson's "single claim for breach of contract" argument directly contradicts the record and the district court's rulings. From the very outset of the litigation, D2 pursued multiple breach-of-contract claims. Not only did D2 allege that Thompson failed to pay for the removal of excess dirt, but it also alleged that Thompson failed to pay for labor and materials pursuant to the terms of their agreement. Thompson has consistently refuted the unpaid-balance allegation throughout the litigation of this case—in its Answer and on summary judgment. The claim nevertheless survived summary judgment and the district court determined that Thompson was required to pay the unpaid balance.

When the prior panel reviewed the district court's decision on the unpaid-balance claim, Thompson contended that it was not required to pay the $81,068.00 because D2 stopped performing before it completed the work. However, the panel agreed with the district court that "Thompson's prior breach and its failure to manage the construction site excused D2's failure to perform." In other words, because D2 was unable to complete its work in certain parts of the site because of debris, Thompson prevented D2 from performing its part of the contract, which is an excuse for nonperformance. The panel therefore affirmed the district court on this ground and held that Thompson breached the contract when it failed to pay the unpaid balance for labor and materials, thereby causing damage to D2 in the amount of $81,068.00. We see nothing "dead wrong" with that decision. *Deutsche*, 902 F.3d at 551. Because the prior panel accurately interpreted the district court's factual findings and conclusions of law, we affirm the district court's order implementing the mandate.

No. 21-40629

*B. Attorney's Fees*

Next, Thompson challenges the award of trial and appellate attorney's fees in D2's favor. "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). In Texas, parties are generally required to pay their own attorney's fees unless a statute or contract provides otherwise.[2] *See In re Nat'l. Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017). In this case, the parties did not have a contract provision providing for fees. Instead, D2 requested and the district court awarded fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

*i. Chapter 38 Fees*

Chapter 38 "provides that a party 'may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.'" *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (quoting § 38.001(8)). "To recover attorney's fees under [§] 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Id.* (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995)); *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 662 (Tex. 2009). Given our determination that the district court did not err in issuing the $81,068.00 award of damages to D2, the second prong is satisfied. The issue before us—whether D2 is entitled to Chapter 38 fees—thus turns on whether D2 prevailed on its cause of action.

---

[2] The parties agree that this issue is guided by Texas law.

No. 21-40629

According to Thompson, Texas law requires courts to apply the "main issue" test, and the district court committed reversible error by failing to do so. Thompson contends that, had the district court applied the "main issue" test, it would have identified the excess-dirt claim as the main issue of the litigation and, because Thompson successfully defended against that claim, the court would have determined that it was the prevailing party instead of D2. We disagree.

In determining prevailing party status, Texas courts only consider what the main issue of the litigation was "where both parties received judgment under the cause of action, i.e., where both parties breached the contract." *Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 564 (Tex. App. 2003); *see also Hrdy v. Second St. Props. LLC*, 649 S.W.3d 522, 560 (Tex. App.—Houston [1st Dist.] 2022, pet. filed). But when only one party receives a judgment in the cause of action, Texas courts focus the prevailing party analysis on the "success on the merits, i.e., the party who is vindicated by the trial court's judgment." *Flagship Hotel, Ltd.*, 117 S.W.3d at 565 (citing *City of Amarillo v. Glick*, 991 S.W.2d 14, 17 (Tex. App.—Amarillo 1997, no pet.) (concluding that the plaintiffs were the prevailing party even though they did not receive all requested relief)).

For example, in *Flagship*, the plaintiff sued the city for breach of contract alleging (1) failure to properly maintain and repair the pier, (2) liability for excess payments, and (3) liability for taxes collected in violation of the lease. The plaintiff recovered damages on one of the three breach-of-contract theories—liability for taxes—and he also recovered attorney's fees. On appeal, the city argued that the plaintiff was not entitled to fees under § 38.001 because it won on the main issue—maintenance and repairs. The court rejected this argument, emphasizing that the "main focus of the inquiry should be whether the agreement was breached, not the extent of the breach" because a prevailing party is not required to receive a judgment "to

8

the extent of its original contention." *Id*. at 564 (citation omitted). It thus held that the plaintiff was entitled to attorney's fees because it was the only party to prevail on the breach-of-contract cause of action and receive damages as required under § 38.001. *Id*. at 565.

Likewise, here, the only party that prevailed on a breach-of-contract claim and received damages on that claim was D2. As the district court pointed out, D2's failure to recover damages in the amount that it originally sought does not prevent it from obtaining Chapter 38 fees. *See City of Amarillo*, 991 S.W.2d at 17. Recall, each party brought its own breach-of-contract claim against the other party in this case. It was D2 that successfully defended against Thompson's breach-of-contract counterclaim and obtained a take nothing judgment in its favor. Put simply, Thompson was not vindicated by the district court's judgment. *See Flagship Hotel, Ltd.*, 117 S.W.3d at 565.

Thompson's arguments to the contrary do not convince us otherwise. It argues that Texas courts have applied the main issue test "when both parties did not breach an agreement," and thus *Flagship* is inconsistent with Texas law. To support this notion, it cites *Happy Endings Dog Rescue v. Gregory*, but that case is inapposite. 501 S.W.3d 287, 295 (Tex. App. 2016). In *Gregory*, the Texas appellate court reversed the plaintiffs' damages award and, because they no longer prevailed on those claims, reversed their award of attorney's fees. Unlike the *Gregory* court, the previous panel in this case affirmed the district court's judgment for D2 on the breach-of-contract claim for the unpaid balance, and as a result, D2 was properly awarded damages on that claim.

It next argues that under Texas law a defendant can prevail by successfully defending against an alleged breach. It then cites *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, a case in which the Supreme Court

of Texas applied the main issue test to construe "prevailing party" language that was not defined in the commercial lease at issue. 578 S.W.3d 469, 486 (Tex. 2019). In doing so, Thompson ignores that the *Rohrmoos Venture* court explained that cases involving Chapter 38 are merely instructive, not controlling, because the contractual standard, which did not require that the awardee obtain damages, was less stringent than Chapter 38.[3] *Id.* at 484–85. This case therefore provides little precedential support for application of the "main issue" test in this context.

To contravene this, Thompson cites *Dees v. Dees* for the proposition that the main issue test is proper in Chapter 38 cases. No. 02-13-00184-CV, 2014 WL 2538750, at *6 (Tex. App.—Fort Worth June 5, 2014, no pet.) (mem. op.). But this argument misses the point. In *Dees*, the court applied the main issue test to a claim for attorney's fees under Chapter 38 and held that a party prevailed on the main issue—equitable subrogation. However, in a footnote, it noted that the defendant also recovered a judgment against the plaintiffs "on the loan agreement," but those issues were not contested at trial and thus not the main issue. *Id.* at *6 n.7. This case is therefore consistent with *Flagship* in that it applied the main issue test where "both parties received [a] judgment." *Flagship Hotel, Ltd.*, 117 S.W.3d at 564.

Accordingly, we hold that the district court did not err in determining that D2 prevailed on the cause of action. And for this reason, it was mandatory for the district court to assess a reasonable fee award. *DP Sols.,*

---

[3] What's more, Thompson's breach of the contract contradicts its assertion that it successfully defended against the breach-of-contract suit. *See Rohrmoos Venture*, 578 S.W.3d at 486 (holding that counter-defendant was excused for its breach by obtaining a jury verdict that the counter-plaintiff breached first, and thus it "successfully defended" against the counterclaim). *Bigbee v. Samadian Fam. Ltd. P'ship*, 2022 WL 4298725, *5 (Tex. App. Sept. 19, 2022).

*Inc. v. Rollins, Inc.*, 353 F.3d 421, 433 (5th Cir. 2003) (citations omitted) (assessing reasonableness of district court's award of Chapter 38 fees).[4]

Lastly, Thompson argues that the district court erred in granting appellate attorney's fees because this court reversed the excess dirt claim on appeal. However, in determining that D2 prevailed on its cause of action, we are holding that it prevailed overall. Indeed, "Texas law requires that if an award of trial attorney's fees is mandatory under civil practice and remedies code [§] 38.001, an award of appellate attorney's fees is likewise mandatory." *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 199 (Tex. App. 2012); *see also Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex. 1990) (per curiam). Having determined that the district court did not err in awarding to D2 attorney's fees under Chapter 38, we next turn to whether such fees were reasonable. *See Mathis*, 302 F.3d at 461.

### ii. Reasonableness of Fees

Typically, under these circumstances, the attorney's fees would be subject to a reduction that reflect the prevailing party's minimized recovery on appeal. However, Thompson made a strategic choice in this case to take an all-or-nothing approach. That is, it never argued to the district court or on appeal that the amount of fees awarded to D2 were unreasonable.[5] Instead, it only argued that D2 was not entitled to attorney's fees at all. Accordingly, we must decide the case as it is presented to us.

---

[4] Given our holding that D2 was entitled to Chapter 38 fees, we need not address the district court's alternative holding that D2 is entitled to attorney's fees under Texas Property Code provisions §§ 28.005(b) and 53.156.

[5] Thompson further confirmed at oral argument that it had not argued for the apportionment or reasonableness of the fee awards because of its strongly held position that D2 was not a prevailing party under the main issue test. *See* Oral Arg. at 1:20-2:33.

Here, D2 submitted attorney's fee affidavits, along with time records for counsel, requesting a total award. The district court held that the award of trial attorney's fees should not be reduced on the basis of D2's limited recovery after the appeal. According to the district court, although D2 did not recover an award on the excess-dirt claim, the legal work expended to litigate the unpaid-balance claim was interrelated, especially with respect to D2's efforts to defeat Thompson's counterclaim. As to the appellate attorney's fees, the district court reduced the amount sought by D2 by 30% because the billing records included duplicative work. The district court did so, even though Thompson offered no controverting evidence challenging the entries of the fee requests.

Given our deferential standard of review and Thompson's failure to specify any expenses that were unreasonably granted, we cannot say that the district court erred in granting the amount of attorney's fees that it did. *See Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 208–10 (Tex. App. 2005) (rejecting segregation and excessive challenge to attorney's fee award where party did not object and awarding fees two times more than actual damages recovered); *Lee v. Perez*, 120 S.W.3d 463,469–70 (Tex. App. 2003) (holding that the court does not have discretion to award nothing when there was uncontested evidence of reasonable appellate attorney's fees that were sought by a prevailing party); *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 685 (Tex. App. 2008) (holding that uncontroverted evidence was sufficient to support the jury's award of trial and appellate attorney's fees that were four times the damages recovered).

For these reasons, we AFFIRM the district court's judgment in full.